IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADRIAN BOMBIN and SAMANTHA ROOD, on behalf of themselves and all others similarly situated,<br>　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>SOUTHWEST AIRLINES CO.,<br>　　　　　　Defendant. | Civil No. 5:20-cv-01883-JMG |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                               **March 29, 2021**

Plaintiffs Adrian Bombin and Samantha Rood purchased airline tickets from Defendant Southwest Airlines Co. ("Southwest"). At the outset of the COVID-19 crisis, Southwest canceled Bombin's flight, and rescheduled Rood's. Bombin and Rood now claim that they are entitled to relief (individually and on behalf of a putative class) for breach of contract because Southwest did not refund their fares. Before the Court is Southwest's motion to dismiss, strike class action allegations, or transfer venue. ECF No. 16. For the following reasons, Southwest's motion is denied.

**I.       BACKGROUND**

In February 2020, Bombin booked a flight from Maryland to Cuba through Southwest's mobile application. Am. Compl. ¶ 26, ECF No. 14. That same month, Rood purchased two Southwest tickets for travel from California to Arizona. *Id.* ¶ 31.

By March, however, COVID-19 had been declared a global pandemic, and the United States started implementing travel restrictions. *Id.* ¶¶ 7–8. Faced with the virus and declining consumer demand, Southwest changed its flight schedules. *Id.* ¶¶ 13–15. In particular, it

canceled Bombin's flight to Cuba, and rescheduled Rood's flight to Arizona three separate times. *Id.* ¶¶ 28, 33–39.

Upon learning of the cancellation, Bombin called Southwest's customer service department to gain more information. *Id.* ¶ 28. He requested a refund, which Southwest denied. *Id.* ¶ 29. Instead, Southwest offered Bombin credit toward a future flight. *Id.* ¶¶ 29–30. Rood was similarly offered a travel credit in lieu of a refund. *Id.* ¶¶ 34, 37, 40.

Bombin and Rood allege that Southwest breached its Contract of Carriage by refusing to offer refunds for their flights. *Id.* ¶ 19. Section 9 of the Contract of Carriage provides in relevant part:

> a. Failure to Operate as Scheduled
>
> (1) Canceled Flights or Irregular Operations. In the event Carrier cancels or fails to operate any flight according to Carrier's published schedule, or changes the schedule of any flight, Carrier will, at the request of a Passenger with a confirmed Ticket on such flight, take one of the following actions:
>
> > (i) Transport the Passenger at no additional charge on Carrier's next flight(s) on which space is available to the Passenger's intended destination, in accordance with Carrier's established reaccommodation practices; or
> >
> > (ii) Refund the unused portion of the Passenger's fare in accordance with Section 4c.

Am. Compl. Ex. A, at 40, ECF No. 14. Southwest's Customer Service Commitment, a document which is incorporated by reference in the Contract of Carriage, further provides that, in the event Southwest changes a flight schedule more than seven days before departure, customers "will have the option to select the revised itinerary, choose an alternate flight/date within a 14-day parameter of [their] original travel, or cancel [their] trip without penalty and receive a refund issued to the original form of payment." Am. Compl. Ex. B, at 2, ECF No. 14. Bombin and

2

Rood assert that these provisions, taken together, afford customers the discretion to select a refund due to a scheduling change. Am. Compl. ¶¶ 46–47, ECF No. 14. In other words, Southwest cannot unilaterally decide to offer travel credits in this situation—the choice (between travel credits, a refund, or a rebooking on a future flight) rests with the customer whose original flight was canceled or rescheduled.

Southwest now moves to dismiss for failure to state a claim. ECF No. 16. Southwest argues that Bombin's and Rood's claims are effectively foreclosed by Section 4(c)(4) of the Contract of Carriage:

> Delays or Involuntary Cancellation. If a Passenger's scheduled transportation is canceled, terminated, or delayed before the Passenger has reached his/her final destination as a result of a flight cancellation, Carrier-caused missed connection, flight delay, or omission of a scheduled stop, Carrier will either transport the Passenger at no additional charge on another of Carrier's flights, refund the fare for the unused transportation in accordance with the form of payment utilized for the Ticket, or provide a credit for such amount toward the purchase of future travel.

Def.'s Mot. 5–8, ECF No. 16-1; *see also* Am. Compl. Ex. A, at 14, ECF No. 14. There has not been a breach, Southwest contends, because this provision "expressly permitted Southwest to elect a fare credit as Plaintiffs' remedy." Def.'s Mot. 6, ECF No. 16-1. Southwest further asserts that Bombin's claims are preempted by the Montreal Convention (*id.* at 11–12), and that Plaintiffs' claims as a whole are preempted by the Airline Deregulation Act. *Id.* at 8–10.

Beyond Federal Rule of Civil Procedure 12(b)(6), Southwest raises Rule 12(b)(1) and argues that the Court lacks subject-matter jurisdiction over Plaintiffs' claims. *Id.* at 15–17. In support, Southwest points to the terms and conditions on Southwest.com, which contain both a class action waiver and a forum-selection clause. *Id.* at 13. Because Bombin and Rood purportedly agreed to these terms before booking their flights, Southwest argues that they lack

standing to bring the instant lawsuit. *Id.* at 16–17.

Southwest also moves to strike Plaintiffs' class allegations as failing to comply with the requirement of ascertainably. *Id.* at 14–15. Southwest takes issue with the following language in Plaintiffs' proposed class definition: "All persons in the United States . . . whose flight(s) were canceled or *changed* by Southwest . . . ." Compl. ¶ 76, ECF No. 14 (emphasis added). "[E]xcluded from the Class is any person who was reaccommodated and transported to their ticketed destination by Defendant or its agents on the next available flight and within a *reasonable time* of the original ticketed departure." *Id.* ¶ 77 (emphasis added). Southwest also contends that this exclusion renders the class unascertainable.

Finally, Southwest requests that we transfer this case to the Northern District of Texas. Def.'s Mot. 17–18, ECF No. 16-1.

## II.   DISCUSSION

District courts have "'discretion to address convenience-based venue issues' in the first instance," so we begin by reviewing Southwest's transfer request. *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 95 (3d Cir. 2018) (quoting *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 404 n.8 (3d Cir. 2017)). We then turn to Southwest's arguments for dismissal under Rules 12(b)(1) and 12(b)(6) before considering its motion to strike Plaintiffs' class allegations.

### A.   Transfer of Venue

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). A motion to transfer venue is appropriate where, as here, a party invokes a forum-selection clause. *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60–61 (2013).

"First, a district court must determine whether the forum-selection clause is valid and enforceable." *Silvis v. Ambit Energy, L.P.*, 90 F. Supp. 3d 393, 397 (E.D. Pa. 2015). "Second, a court must consider whether, pursuant to § 1404(a), 'extraordinary circumstances' militate against enforcing the forum-selection clause." *Id.* (citing *Atl. Marine*, 571 U.S. at 62). Federal law determines whether the clause is enforceable, while state law governs the interpretation of the clause's scope. *See Collins v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017); *Universal Atl. Sys., Inc. v. Honeywell Int'l, Inc.*, No. 17-4660, 2018 WL 1757727, at *3 (E.D. Pa. Apr. 12, 2018). In deciding this motion, "a court is not limited to the pleadings, and may consider affidavits and other evidence." *Roller v. Red Payments L.L.C.*, No. 18-1834, 2019 WL 3802031, at *4 (E.D. Pa. Aug. 12, 2019) (citing *Fellner ex rel. Estate of Fellner v. Phila. Toboggan Coasters, Inc.*, No. 05-cv-1052, 2005 WL 2660351, at *4 (E.D. Pa. Oct. 18, 2005)).

Southwest's transfer request hinges on the terms and conditions printed on its website, which include the following language: "You agree to the personal and exclusive jurisdiction of the courts located within Dallas, TX. You hereby consent to the exclusive jurisdiction and venue of the State and Federal courts in Dallas, Texas in all disputes." Def.'s Mot. 13, ECF No. 16-1. In its motion, Southwest alleges that users of its website and mobile application—including Bombin and Rood—must click to accept these terms and conditions upon purchasing tickets. *Id.* at 13, 16. The terms and conditions therefore amount to a "clickwrap agreement." *See Zabokritsky v. JetSmarter, Inc.*, No. 19-273, 2019 WL 2563738, at *3 (E.D. Pa. June 20, 2019). "A clickwrap agreement presents the user with a message on his or her computer screen, requiring the user to manifest his or her assent to the terms of the . . . agreement by clicking on an icon." *Id.* (internal quotation marks and citation omitted). This Court has enforced forum-selection clauses contained in clickwrap agreements. *See, e.g.*, *Feldman v. Google, Inc.*, 513 F.

Supp. 2d 229, 246–48 (E.D. Pa. 2007); *see also ADP, LLC v. Lynch*, No. 2:16-01053, 2016 WL 3574328, at *4 (D.N.J. June 30, 2016) ("Numerous courts, including courts in the Third Circuit, have enforced clickwrap agreements." (internal citation omitted)).

The problem with Southwest's motion, as Plaintiffs recognize (*see* Pls.' Opp'n 17–18, ECF No. 17), is that the record is insufficiently developed to rule on the enforceability of the forum-selection clause. While Southwest includes a hyperlink to its terms and conditions in its motion (Def.'s Mot. 13, ECF No. 16-1), there is no factual support for its assertion that Plaintiffs *actually* agreed to the terms and conditions when they purchased their tickets.

In short, there is no proof (beyond the unsworn allegations of defense counsel) that users of the Southwest website and mobile application must click on an icon to accept the terms and conditions before purchasing airline tickets. Southwest attached a declaration to its motion (*see* ECF No. 16-3), but the affiant, a Southwest employee, says nothing about the terms and conditions on Southwest's website or mobile application. Compare that declaration to the one in *Ward v. Am. Airlines, Inc.*, No. 4:20-cv-00371-O, 2020 WL 8415080 (N.D. Tex. Nov. 2, 2020). There, plaintiffs sued an airline for its failure to "refund the costs of their nonrefundable tickets after it cancelled their flights." *Id.* at *4. The airline moved to compel arbitration based on an arbitration clause in an online clickwrap agreement. *Id.* at *4–5. To put the clickwrap agreement before the court, the airline submitted a declaration that not only authenticated the terms of the agreement, but also affirmed that "customers are not able to purchase tickets without agreeing to" its terms. *Id.* at *2 n.1. Such evidence is absent here.

And without consideration of the forum-selection clause, we find that Southwest has not carried its "burden of establishing the need for transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). "A district court should not transfer a case relying 'entirely on the facts

and conclusions asserted in [the movant's] motion,'" yet that is exactly what Southwest asks us to do. *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2019 WL 5394109, at *3 (E.D. Pa. Oct. 22, 2019) (quoting *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 757 (3d Cir. 1973)); *see also Theresa Ayling v. Travelers Prop. Cas. Corp.*, No. 99-3243, 1999 WL 994403, at *3 (E.D. Pa. Oct. 28, 1999) ("[T]he Third Circuit has required that defendants submit affidavits, depositions or other evidence to support their motion for transfer." (internal citation omitted)). "Although it would undoubtedly be inconvenient for defendants to have their business in [Texas] and travel to the Eastern District of Pennsylvania, there is nothing in the transfer motion to indicate that defendant would suffer a greater inconvenience than would plaintiff[s] if the case is transferred." *Plum Tree*, 488 F.2d at 757 n.3. Accordingly, we deny Southwest's motion to transfer venue.

      **B.**    **Standing**

Southwest next asks that we dismiss the complaint for lack of subject-matter jurisdiction based on Article III standing. Def.'s Mot. 15–17, ECF No. 16-1. "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (internal quotation marks and citation omitted). A Rule 12(b)(1) motion can present either a facial or factual attack to the complaint. The former "requires the court to consider the allegations of the complaint as true." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (internal quotation marks and citation omitted). The latter "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or otherwise present[ing] competing facts." *Id.* (internal quotation marks and citation omitted). Because a factual attack permits the court to evaluate evidence outside the pleadings, it "strips the plaintiff of the protections and factual

deference provided under 12(b)(6) review." *Hartig Drug Co. Inc. v. Senju Pharm. Co. Ltd.*, 836 F.3d 261, 268 (3d Cir. 2016) (citing *Davis*, 824 F.3d at 348–50). "When a factual challenge is made, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Davis*, 824 F.3d at 346.

Southwest presents a factual attack to Plaintiffs' claims. Def.'s Mot. 17, ECF No. 16-1. As a result, Southwest urges us to consider the terms and conditions on Southwest.com, which contain a class action waiver. *Id.* at 13. Southwest alleges that Plaintiffs lack "the requisite 'standing' to represent the putative class" because they agreed to the class action waiver. *Id.* at 16–17.

For the reasons discussed above, we will not consider the Southwest.com terms and conditions at this time. And in the absence of the terms and conditions, we are not yet convinced that Southwest raises a viable standing argument. "The fact '[t]hat a suit may be a class action . . . adds nothing to the question of standing.'" *Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451, 464 (D.N.J. 2013) (quoting *Lewis v. Casey*, 518 U.S. 343, 356 (1996)). Indeed, "[o]nce Article III standing is determined vis-à-vis the named parties . . . there remains no further separate class standing requirement in the constitutional sense." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 634 n.11 (3d Cir. 2017) (internal quotation marks and citation omitted); *see also Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 361 n.3 (3d Cir. 2015) ("The named plaintiff in a class action must meet all the jurisdictional requirements to bring an *individual suit asserting the same claims*, including standing." (emphasis added) (quoting 5 Jerold S. Solovy et al., MOORE'S FEDERAL PRACTICE—CIVIL § 23.63 (3d ed. 1997))).

As it currently stands, Plaintiffs have met the jurisdictional requirements to bring their breach of contract claims. A litigant has standing if she "(1) suffered an injury-in-fact or an

8

invasion of a legally protected interest, (2) that is fairly traceable to the defendant's conduct, and (3) is likely to be redressed by a favorable judicial decision." *Pozzuolo v. Portfolio Recovery Assocs., LLC*, 371 F. Supp. 3d 217, 221 (E.D. Pa. 2019) (internal quotation marks and citation omitted). Here, Plaintiffs have plausibly alleged that they (1) suffered an injury because of a breach of contract that (2) was caused by Southwest's conduct, and (3) their injury is redressable in the form of compensatory damages. *See* Am. Compl. ¶¶ 91–95, ECF No. 14; *see also* Pls.' Opp'n 15, ECF No. 17. We will deny Southwest's motion to dismiss for lack of standing.[1]

    **C.**    **Breach of Contract**

Southwest also asks that we dismiss the complaint for failure to state a claim.[2] To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible, and survives a 12(b)(6) motion, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Our analysis proceeds in three parts. We first "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675). We then "identify allegations that, 'because they are no more

---

[1] "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). Accordingly, we will revisit this ruling if it becomes clear that Plaintiffs lack standing to pursue their claims.

[2] In the alternative, Southwest asks that we dismiss under Rule 12(b)(6) because of the forum-selection clause contained in the Southwest.com terms and conditions. As mentioned above, the terms and conditions were not properly presented to the court, and we will not consider them at this stage. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1996 (3d Cir. 1993))).

than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Texas law governs this dispute, thanks to the Choice of Law provision in Southwest's Contract of Carriage. *See* Am. Compl. Ex. A, at 44, ECF No. 14. To state a breach of contract claim under Texas law, a plaintiff must show "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 579 (5th Cir. 2015) (internal quotation marks and citation omitted).

This case turns on the third element; that is, whether Southwest breached the Contract of Carriage when it failed to offer refunds to Plaintiffs. Southwest claims that there is no breach because the Contract of Carriage is unambiguous, and it vests Southwest with discretion to issue fare credits instead of refunds. *See* Def.'s Mot. 5, ECF No. 16-1. Plaintiffs counter that the Contract of Carriage can reasonably be interpreted to provide customers with the right to choose a refund. Pls.' Opp'n 3, ECF No. 17. We agree with Plaintiffs and find that they have stated a plausible breach of contract claim. Stated differently, the Contract of Carriage does not *unambiguously* vest Southwest with discretion to select between a credit and refund when a flight is canceled or otherwise rescheduled. *See Gray v. Chesapeake Expl., L.L.C.*, No. SA-14-CA-1020-XR, 2015 WL 339744, at *5 (W.D. Tex. Jan. 26, 2015) (rejecting argument that the contract at issue was unambiguous and denying motion to dismiss).

At the outset, we acknowledge the labyrinthine nature of the Contract of Carriage. It is, as Judge Hamilton of the Seventh Circuit recognized, "a puzzle." *Hughes v. Southwest Airlines*

10

*Co.*, 961 F.3d 986, 991 (7th Cir. 2020) (Hamilton, J., concurring). Section 4(c)(4) of the Contract of Carriage suggests that Southwest, and Southwest alone, can decide to offer credits when it cancels a flight. *See* Am. Compl. Ex. A, at 14, ECF No. 14 ("Carrier will either transport the Passenger at no additional charge . . . refund the fare . . . or provide a credit."). By contrast, Section 10 of the Customer Service Commitment (which is incorporated by reference in the Contract of Carriage), expresses in no uncertain terms that customers "*will have the option to . . . receive a refund*" when Southwest makes "any change" to a flight schedule more than seven days before departure. Am. Compl. Ex. B, at 2, ECF No. 14 (emphasis added).

"A contract is not necessarily ambiguous simply because some sections arguably conflict." *NuStar Energy, L.P. v. Diamond Offshore Co.*, 402 S.W.3d 461, 466 (Tex. Ct. App. 2013). When dealing with provisions that arguably conflict, "we should attempt to harmonize the two provisions." *Royal Maccabees Life Ins. Co. v. James*, 146 S.W.3d 340, 345 (Tex. Ct. App. 2004) (internal citation omitted); *see also NuStar*, 402 S.W.3d at 467 ("[W]e must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." (internal quotation marks and citation omitted)). We must construe the contract "from a utilitarian standpoint bearing in mind the particular business activity sought to be served and will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive." *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (internal quotation marks and citation omitted). If the contract is capable of "more than one reasonable interpretation after applying the pertinent rules of contract construction, then the contract is ambiguous and there is a fact issue regarding the parties' intent." *NuStar*, 402 S.W.3d at 466 (citing *El Paso Field Servs., L.P. v. MasTec N.*

*Am., Inc.*, 389 S.W.3d 802, 806 (Tex. 2012)); *see also id.* ("The contract is unambiguous if it can be given a certain or definite meaning as a matter of law." (internal citation omitted)).

With these principles in mind, we find that both parties have advanced credible interpretations of the Contract of Carriage. The Court cannot reconcile Section 4(c)(4) of the Contract of Carriage and Section 10 of the Customer Service Commitment at this time.

Southwest's point, that Section 4(c)(4) is the most specific provision about refunds and therefore controls, is well taken. Def.'s Mot. 8, ECF No. 16-1; *see Lederer v. Lederer*, 561 S.W.3d 683, 693 (Tex. Ct. App. 2018) ("To the extent of any conflict, specific provisions control over more general ones." (internal citation omitted)). But to credit Southwest's interpretation would afford the Contract of Carriage a lopsided construction and render Section 10 of the Customer Service Commitment meaningless. We find it unlikely that a customer would "give the airline an *utterly discretionary choice*, regardless of reasons, among (a) flying her to her destination on time, (b) flying her to her destination eventually, (c) refunding her money, or (d) keeping her money and merely offering credit for future travel, perhaps to some other destination." *Hughes*, 961 F.3d at 993 (Hamilton, J., concurring) (emphasis added).

Plaintiffs' argument, that Section 4(c)(4) is "silent as to who holds discretion to choose among various options," is similarly viable. Pls.' Opp'n 4, ECF No. 17; *see also Hughes*, 961 F.3d at 991 (Hamilton, J., concurring) ("[T]o the extent there is a choice of remedy, does the choice belong to the passenger or the airline?"). Section 10 of the Customer Service Commitment expressly vests customers with that discretion, and we cannot read that provision out of the contract. *See NuStar*, 402 S.W.3d at 466 (instructing that we must "give effect to all of the contract's provisions").

Accepting Plaintiffs' well-pleaded allegations as true, we find that they have stated a plausible claim for relief. Bombin's flight was canceled, and Rood's flight was rescheduled. Am. Compl. ¶¶ 28, 33–39, ECF No. 14. In violation of the Contract of Carriage and Customer Service Commitment, Southwest failed to give Plaintiffs the option of a refund. *Id.* ¶¶ 29, 34, 37, 40. The Court will deny Southwest's motion to dismiss.

### 1. Airline Deregulation Act Preemption

Southwest also contends that Plaintiffs' claims are preempted by the Airline Deregulation Act ("ADA"), but this argument fails. "While the ADA 'stops States from imposing their own substantive standards with respect to rates, routes, or services,' it serves as no bar to 'affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated.'" *Ward*, 2020 WL 8415080, at *12 (quoting *Am. Airlines v. Wolens*, 513 U.S. 219, 232–33 (1995)). "'This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.'" *Id.* (quoting *Wolens*, 513 U.S. at 233).

Plaintiffs point directly to the terms of the Contract of Carriage (and the Customer Service Commitment, which is incorporated by reference) to support their allegations. As a result, Plaintiffs' claims are not preempted by the ADA. *See, e.g.*, *Abdel-Karim v. EgyptAir Airlines*, 116 F. Supp. 3d 389, 404 (S.D.N.Y. 2015), *aff'd sub nom. Abdel-Karim v. Egyptair Holding Co.*, 649 F. App'x 5 (2d Cir. 2016) (holding that a breach of contract claim is not preempted where "plaintiff relies mainly upon the parties' agreed-upon terms in the Conditions of Carriage").

### 2. Montreal Convention Preemption

Southwest further argues that Bombin's claim is preempted by the Montreal Convention. The Montreal Convention establishes a "uniform system of liability for international air carriers." *In re Nigeria Charter Flights Contract Litig.*, 520 F. Supp. 2d 447, 452 (E.D.N.Y. 2007) (citing *Ehrlich v. Am. Airlines*, 360 F.3d 366, 371 n.4 (2d Cir. 2004)).[3] Article 29 of the Montreal Convention "preempts state law claims falling within its scope." *Id.* at 453. As relevant here, a claim "for damage occasioned by delay in the carriage by air of passengers, baggage or cargo" falls within the scope of the Montreal Convention. Convention for International Carriage by Air art. 19, May 28, 1999, S. TREATY DOC. No. 106-45 (2000), 1999 WL 33292734; *see also Benjamin v. Am. Airlines, Inc.*, 32 F. Supp. 3d 1309, 1317 (S.D. Ga. 2014) ("By its plain language, Article 19 governs only claims for delay, not non-performance of a contract." (internal citation omitted)).

What constitutes a "delay" under the Montreal Convention is not always clear.[4] Courts distinguish claims sounding in "delay" (which are preempted by the Montreal Convention) from claims sounding in "nonperformance" (which are *not* preempted by the Montreal Convention). *See, e.g.*, *Atia v. Delta Airlines, Inc.*, 692 F. Supp. 2d 693, 699 (E.D. Ky. 2010) ("[F]ederal courts have concluded that where the complaint alleges complete nonperformance of a contract, rather than delay in transportation, the Montreal Convention does not preempt a plaintiff's breach of contract claim.").

---

[3] It is undisputed that both the United States and Cuba are signatories to the Montreal Convention. Bombin booked an international flight from Maryland to Cuba. Am. Compl. ¶ 26, ECF No. 14.

[4] Indeed, flight cancellations are "not expressly addressed" by the Montreal Convention. Jae Woon Lee & Joseph Charles Wheeler, *Air Carrier Liability for Delay: A Plea to Return to International Uniformity*, 77 J. AIR L. & COM. 43, 60 (2012).

14

Simply put, this is not a case where Southwest "properly delivered" Bombin "to the appropriate destination but . . . did so in a[n] untimely manner." *Vumbaca v. Terminal One Grp. Ass'n L.P.*, 859 F. Supp. 2d 343, 366 (E.D.N.Y. 2012). Instead, this case is about Southwest's cancellation of flights and its subsequent failure to offer refunds per its Contract of Carriage. Bombin plausibly alleges nonperformance of contract, so his claim is not preempted by the Montreal Convention.

### D. Motion to Strike

Finally, Southwest moves to strike Plaintiffs' class allegations for lack of ascertainability. Under Federal Rule of Civil Procedure 12(f), courts "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Federal Rule of Civil Procedure 23(d)(1)(D) relatedly provides that a "court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."

"Courts may, in rare instances, strike class allegations prior to a motion for class certification." *Bernstein v. Serv. Corp. Int'l*, No. 17-4960, 2018 WL 6413316, at *3 (E.D. Pa. Dec. 6, 2018). "However, district courts within the Third Circuit typically conclude that motions to strike class action allegations filed before plaintiffs move for class certification are premature." *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 284 F.R.D. 238, 244 (E.D. Pa. 2012) (citing *P.V. ex rel. Valentin v. Sch. Dist. of Phila.*, No. 2:11-cv-04027, 2011 WL 5127850, at *3–4 (E.D. Pa. Oct. 31, 2011)). Granting such a motion before class certification is appropriate "only where '[n]o amount of additional class discovery will alter th[e] conclusion' that the class is not maintainable." *Id.* (quoting *Thompson v. Merck & Co.*, No. C.A. 01-1004, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004)); *see also id.* at 245 (noting that "[d]iscovery and

full briefing on the merits of class certification are typically required" before considering whether the requirements of Federal Rule of Civil Procedure 23 have been satisfied).

Southwest challenges the ascertainability of Plaintiffs' proposed class definition. "The ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (internal quotation marks and citations omitted). The parties primarily dispute whether the use of "reasonable" in the proposed class definition is sufficiently objective. But we need not resolve this issue now. On the face of the First Amended Complaint, we do not find that it would be impossible for Plaintiffs to prove the existence of an ascertainable class. So we will deny the request to strike the class allegations without prejudice to Southwest's ability to litigate this issue during the class certification stage.

### III.  CONCLUSION

For the foregoing reasons, Southwest's motion to dismiss, strike class action allegations, or transfer venue is **DENIED.** An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge