### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

———————————————————————

| | |
|---|---|
| ADRIAN BOMBIN, *et al.,* : | |
| Plaintiffs, : | |
| : | |
| v. : | Civil No. 5:20-cv-01883-JMG |
| : | |
| SOUTHWEST AIRLINES CO., : | |
| Defendant. : | |

———————————————————————

### MEMORANDUM OPINION

**GALLAGHER, J.**                                                    **December 16, 2022**

Plaintiffs Adrian Bombin and Samantha Rood purchased airline tickets from Defendant Southwest Airlines Co. ("Southwest").  Plaintiffs allege (individually and on behalf of a putative class) Southwest breached its contract with Plaintiffs by providing them with a travel credit—and failing to give them the option of a monetary refund—upon modifying its planned flight schedules during the COVID-19 pandemic.  The Parties currently dispute whether class certification is appropriate—and if so, the proper parameters of the class.  Plaintiffs now move to strike certain information produced by Southwest in support of its Motion in Opposition of Plaintiffs' Motion for Class Certification.  For the following reasons, the Court denies Plaintiffs' Motion to Strike.

## I.    FACTUAL BACKGROUND

Plaintiffs allege Southwest's failure to provide the option of a monetary refund upon flight schedule modifications amounted to a breach of contract.  Pls.' Memo. in Supp. of Pls.' Mot. for Class Certification, ECF No. 71-2 at 3 (sealed).  On the issue of class certification, the Court ordered discovery due by March 29, 2022.  ECF No. 61.  On April 22, 2022, Plaintiffs moved for class certification.  *See generally* ECF No. 71-2.  Southwest then filed a Response in Opposition

of Plaintiffs' Motion for Class Certification on June 13, 2022. *See generally* ECF No. 85. Plaintiffs then moved to strike certain information produced by Southwest and relied upon in its Response in Opposition of Class Certification. *See* Pls.' Mot. to Strike, ECF No. 95. Upon the filing of Plaintiffs' Motion to Strike, and upon consideration of the Parties' Joint Motion for Briefing Schedule, the Court held in abeyance class certification briefing deadlines. *See* ECF No. 98. The Court has not yet set a trial date in the matter.

Now, Plaintiffs move to strike Southwest's filings related to: (1) the Behrens Declaration, ECF No. 85-15, and attached exhibits addressing Plaintiffs' and other customers' alleged assent to Southwest's terms and conditions ("T&Cs") containing a class action waiver clause [hereinafter "the Behrens Declaration"];[1] (2) call transcripts; and (3) passenger data/list. ECF No. 95-1 at 3. Plaintiffs contend these materials should be stricken because Southwest failed to properly disclose the subject matter contained in those filings and is unable to show that such failure was harmless or substantially justified.

A.  <u>The Behrens Declaration</u>

Plaintiffs contend, in discovery, Southwest "did not identify . . . any individual likely to have knowledge specifically relating to Plaintiffs' supposed assent to the T&Cs."[2] Yet, Plaintiffs

---

[1] Plaintiff contends the Behrens Declaration focuses on Southwest's business practices with respect to customers' supposed assent to the T&Cs that contain a class action waiver clause. The Behrens Declaration includes a copy of the T&Cs, as well as exhibits of (1) a screenshot of a portion of a booking screen from southwest.com (same for all Defendant's customers seeking to purchase a reservation for travel through southwest.com) and; (2) a screenshot of a portion of a booking screen from Defendant's mobile app (same). ECF No. 96 at 9.

[2] ECF No. 96 at 5. More specifically, Southwest alleges its T&Cs contain a class-action waiver relevant to the instant matter. *See* ECF No. 85 at 14 ("Customers, like Plaintiffs, who purchased fares on Southwest's website or mobile application agreed to Southwest's Terms & Conditions ("Terms"), and specifically to "not bring against [Southwest] any class action lawsuit related to [their] access to, dealings with, or use of the Service.").

assert, after the discovery period Southwest produced—attached to its class certification opposition brief—the Behrens Declaration, in which Elizabeth Behrens, a Customer Relations specialist for Southwest, described "Southwest's business practices with respect [to] customers' supposed assent to the T&Cs."[3]  Plaintiffs contend the information contained in the Behrens Declaration—specifically concerning the T&Cs—was the subject of Plaintiffs' earlier discovery requests.  Namely, they point to RFP No. 1, which requested "ALL DOCUMENTS related to PLAINTIFFS."[4]  In sum, Plaintiffs provide Southwest belatedly "disclosed and produced (via the Behrens Declaration) its employee with knowledge about and documents reflecting . . . customers' supposed assent to the T&Cs, and how those general business practices supposedly showed Plaintiffs' assent to the T&Cs."  Pls.' Mem. in Supp. of Pls.' Mot. to Strike, ECF No. 96 at 16 (unredacted version of document lodged conditionally under seal).

On the other hand, Southwest submits Plaintiffs "never sought any discovery about the class-action waiver."  ECF No. 100 at 7.  Plaintiffs, it is averred, "now pursue an ultimate 'gotcha' argument by citing a generic request for 'all documents related to Plaintiffs.'"  *Id.* at 8.  Southwest also argues Behrens *was* identified in Southwest's initial disclosures as an individual having information regarding "Southwest customer relations, flight cancellations, modifications, airfare

---

[3] ECF No. 95-1 at 15.  More specifically, Plaintiffs moves to strike Defendant's filings related to the Behrens Declaration, ECF No. 85-15, and attached exhibits addressing Plaintiffs' and other customers' alleged assent to Defendant's T&Cs containing a class action waiver clause.  ECF No. 95-1 at 3.

[4] ECF No. 96 at 15.  *See also* Plaintiffs' First Set of Requests for Production of Documents to Defendant, ECF No. 95-4 at 6.  Plaintiff contends this "specific discovery request[] . . . further obligated Southwest to product the exhibits to the Behrens Declaration that show screenshots that Plaintiffs supposedly would have seen and clicked on when purchasing tickets." ECF No. 96 at 17.

refunds, and airfare credits."[5]   Notwithstanding that disclosure—plus the fact that the Court's memorandum opinion on the motion to dismiss highlighted the class action waiver issue[6]—Plaintiffs did not serve any interrogatories related to the class-action waiver, nor did they depose any witnesses about it.  *See* ECF No. 100 at 13; *see also* ECF No. 100, Exs. 1-L, 1-M.  As Southwest sees it, Plaintiffs have sidestepped the T&Cs entirely in the discovery process, and now want to preclude Southwest from fully litigating its class action waiver defense as a result.[7]

   B.  Call Transcripts

   Throughout discovery in this case, the Parties also discussed the availability of call recordings with Southwest customers.[8]   Southwest acknowledged the existence of call recordings with customers, but further provided it did not have the capacity to "easily, efficiently, and systematically identify persons who requested a refund; rather, individual records would need to be manually reviewed (e.g., listening to a consumer phone call) to determine whether any refund was requested."  ECF No. 96-1 at 4-5 (Southwest's responses to Plaintiffs "Questionnaire 1") (sealed).  Southwest claims its acknowledgment of recordings did not prompt Plaintiffs to "seek

---

[5] *See id.* at 12; *see also* Def.'s Initial Disclosures, ECF No. 95-3 at 4.  Southwest also "generically identified '[n]ecessary foundational witnesses, including custodians of records'—which is functionally the role the Behrens Declaration served in supporting the Certification Opposition." ECF No. 100 at 12; *see also* ECF No. 95-3 at 6.

[6] *See* ECF No. 29 at 8-9 (declining to consider the T&Cs at the motion to dismiss stage because they were outside the scope of review under the Federal Rules of Civil Procedure).

[7] *See* ECF No. 100 at 8-10.  *See also*  Def.'s Answer to Pls.' Am. Compl.,  ECF No. 34 at 37 (providing the class action waiver as an affirmative defense: "Plaintiffs waived the ability to seek to represent a class action in this matter").

[8] Plaintiffs requested Southwest produce "all . . . communications relating to refunds, vouchers, or credits for flights that were cancelled or whose schedule was changed by Defendants from January 2020 through the present . . . with customers", and Southwest objected to the request as "irrelevant, overbroad, unduly burdensome, and not proportional." ECF No. 95-5 at 8-9.

production of recordings . . . nor . . . request any audio recordings or even a sample of them." ECF No. 100 at 23.

Following the close of discovery, the issue of call recordings resurfaced in the Parties' briefings on class certification. Southwest contends Plaintiffs raised a new argument in Plaintiffs' Motion for Class Certification, which motivated Southwest to identify a sample of phone calls with customers. ECF No. 100 at 24. In their Motion for Class Certification, Plaintiffs argued Southwest prevented—and thus frustrated—customers from requesting a refund. Pls.' Memo. in Supp. of Pls.' Mot. for Class Certification at 14-15 (unredacted version of document lodged conditionally under seal). Southwest contends, in response to Plaintiffs' frustration argument, Southwest "identif[ied] a sample of phone calls to assess the extent to which customers were purportedly 'frustrated' to show that individual issues would predominate over common issues.'" ECF No. 100 at 24. And "because there was no way to efficiently and systematically identify persons who requested a refund[,]" Southwest "identified a sample of customers who were placed in a queue to receive a phone call after certain . . . itinerary modifications." *Id.* Southwest "then produced all calls with those persons between March 1, 2020 and May 31, 2020 regardless of the content of the call." *Id.* at 25. Thus, Southwest—on the same day it filed an expert report in support of its Motion in Opposition of Plaintiffs' Motion for Class Certification—produced the Call Transcripts.[9] Plaintiffs assert this "late disclosure of the Call Transcripts," following the close of discovery is not substantially justified and thus should be stricken. ECF No. 96 at 20-21.

---

[9] *See* ECF No. 96 at 9; *see also* ECF No. 100-1 ¶¶ 13-14. The transcripts created from this sample of phone calls are hereinafter referred to as "the Call Transcripts." In an email from Southwest's counsel to Plaintiffs' counsel, Southwest provided the Call Transcripts are:

> [C]all transcripts that Southwest's expert relied upon, so [Southwest is] producing them given that his report was filed with Southwest's class certification opposition.

C.  <u>Passenger Data/List</u>

Plaintiffs also allege Southwest improperly served a list containing last names of Southwest passengers and purchasers ("Passenger Data") following the close of discovery on June 1, 2022. *See* ECF No. 96 at 6; ECF No. 100 at 20-21.  The Passenger Data included the last names of passengers and purchasers contained in a 28-flight sample Southwest previously collected to provide "extensive flight data."  ECF No. 100 at 20.  Plaintiffs assert the information in the Passenger Data was "directly responsive to" Plaintiffs earlier RFP requests in discovery.[10] Southwest does not dispute the timeliness of its production of the Passenger Data.  *See* ECF No. 100 at 20-21.   Nevertheless, Southwest minimizes the significance of its delay in producing the Passenger Data by arguing it had previously provided Plaintiffs with the information and merely provided *further* identifying information—namely, the last names of passengers and purchasers— in response to Plaintiffs' Motion for Class Certification.  *Id.*

Furthermore, Southwest contends it produced the Passenger Data in response to a novel and consequential change in Plaintiffs' proffered class definition.  *Id.* at 21.  Southwest argues Plaintiffs previously defined their class in terms of *purchasers* of tickets, Am. Comp., ECF No. 14 ¶ 76, but recently defined their class in terms of *passengers* holding tickets.  ECF No. 71 at 1.

These are transcripts of calls with customers who had the following remark in their PNR: "SKD CHG FAILED." This remark was used for certain individuals who were placed in a queue to receive a call from Southwest about itinerary modifications (in lieu of an e-mail). In light of Plaintiff's argument in its Motion for Class Certification regarding frustration of performance of a condition precedent, we randomly selected customers with this remark in at least one PNR, collected all calls with those customers that took place between March 1, 2020, to May 31, 2020, and produced transcripts of all calls collected.

ECF No. 95-8 at 2.

[10] ECF No. 96 at 22.  Specifically, Plaintiffs cite RFP Nos. 3, 4, and 5 as asking for this information.

Southwest further contends this change is significant because the alleged governing contract here "does not . . . permit a refund to the passenger but rather to the [purchaser with the] 'same form as the original payment.'"  ECF No. 100 at 20.  So Southwest produced the Passenger List to support its "argu[ment] that the newly defined class members were not entitled to the relief sought."  *Id.* at 21.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 26 states, in relevant part, "a party must, without awaiting a discovery request, provide to the other parties: (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." FED. R. CIV. P. 26(a)(1)(A)(i).  And "a party also has the obligation to supplement or correct [their] initial disclosures if [they] 'learn[] that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.'" *Sabol v. Allstate Prop. & Cas. Ins. Co.*, 309 F.R.D. 282, 285 (M.D. Pa. 2015) (citing FED. R. CIV. P. 26(e)(1)(A)).  "Furthermore, if a party fails to provide the information required by Rule 26(a) and (e), Federal Rule of Civil Procedure 37(c) states, 'the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'" *Id.* (citing FED.R.CIV.P. 37(c)(1)).

A motion to strike should thus only be granted upon consideration of five factors: "(1) the prejudice or surprise to the party against whom the evidence was offered; (2) the ability of the injured party to cure the prejudice; (3) the likelihood the admission of the late evidence would

disrupt the orderly and efficient trial of the case . . . ; (4) the bad faith or willfulness in failing to comply with the District Court's orders; and (5) the importance of the evidence to the proffering party." *Hill v. TD Bank, NA*, 586 F. App'x 874, 879 (3d Cir. 2014). "After examining these five factors, the court has discretion to determine whether exclusion of the evidence is warranted." *Sabol*, 309 F.R.D. at 286.

"The Third Circuit has cautioned that 'exclusion of critical evidence is an extreme sanction, not normally to be imposed absent a showing a willful deception or flagrant disregard of a court order by the proponent of the evidence.'" *Aetna Inc. v. Mednax, Inc.*, No. CV 18-2217, 2021 WL 949454, at *4 (E.D. Pa. Mar. 12, 2021) (citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997). Nevertheless, "[e]ven if there is no evidence of bad faith, where an oversight is not rationally explained and is surely prejudicial, exclusion is appropriate." *Id.* (citing *Mercedes Benz USA LLC v. Coast Auto. Grp. Ltd.*, No. CIV.A. 99-3121 (WHW), 2008 WL 4378294, at *4 (D.N.J. Sept. 23, 2008), *aff'd sub nom. Mercedes-Benz USA, Inc. v. Coast Auto. Grp., Ltd.*, 362 F. App'x 332 (3d Cir. 2010) (internal citations omitted)). Therefore, "[s]triking some or all of a pleading is . . . considered a drastic remedy to be resorted to only when required for the purposes of justice." *Tennis v. Ford Motor Co.*, 730 F. Supp. 2d 437, 443 (W.D. Pa. 2010) (citing *Thornton v. UL Enterprises, LLC*, 2010 WL 1005021 at *2 (W.D.Pa. March 16, 2010) (internal citations omitted)).

## III.   DISCUSSION

### A.   The Behrens Declaration & Exhibits

First, the Parties dispute whether Southwest timely and sufficiently identified Ms. Behrens and her knowledge of customers', including the named Plaintiffs, interactions with Southwest's

T&Cs when purchasing flights online and through Southwest's mobile application.  But even if Southwest's introduction of the Behrens Declaration was untimely, the five factors set forth by the U.S. Court of Appeals for the Third Circuit do not support striking the declaration.[11]

### a.  Prejudice & Ability to Cure Prejudice

Southwest's use of the Behrens Declaration minimally prejudices Plaintiffs.  As to prejudice or surprise, Southwest correctly notes both Parties raised the subject matter of the Behrens Declaration (i.e., the T&Cs) in their motion to dismiss briefings.  *See* Def.'s Mot. to Dismiss, ECF No. 16-1 at 17-19 (filed August 3, 2020); Pls.' Memo. in Opp. to Def.'s Mot. to Dismiss, ECF No. 17 at 17-19 (filed August 17, 2020).  Southwest also notes the Court currently has not scheduled a trial date.  Plaintiffs contends the timing of Southwest's disclosure around class certification deadlines—not the trial—prejudices Plaintiffs.  But the class certification deadlines remain stayed.  *See* ECF No. 98.  And the Court has not yet scheduled a hearing on the certification issue.  Furthermore, even if Plaintiffs *were* prejudiced by the Behrens Declaration,

---

[11] Plaintiffs contend Southwest "did not identify . . . any individual likely to have knowledge specifically relating to Plaintiffs' supposed assent to the T&Cs" in discovery.  ECF No. 96 at 5. Plaintiffs further contend they requested information related to the T&Cs in their RFP No. 1, which requested "ALL DOCUMENTS related to PLAINTIFFS."  *Id.* at 6.  But Southwest identified Ms. Behrens in its initial disclosures as an individual having information regarding "Southwest customer relations, flight cancellations, modifications, airfare refunds, and airfare credits."  ECF No. 95-3 at 6.  And the Court is not persuaded by Plaintiffs' argument they requested information on the T&Cs issue in their general RFP No. 1 request.  *See, e.g., Devore v. City of Philadelphia*, No. 00-3598, 2002 WL 32341801, at *2 (E.D. Pa. Nov. 14, 2002) ("Broad and undirected requests for all documents which relate in any way to the complaint are regularly stricken as too ambiguous."); FED. R. CIV. P. 34(b) (providing that requests for production "must describe with reasonable particularity each item or category of items to be inspected").  In fact, Plaintiffs did not serve any interrogatories related to the T&Cs issue, nor did they depose any witnesses on the topic. *See* ECF No. 100 at 13; *see also* ECF No. 100, Exs. 1-L, 1-M.  Thus the Court finds it convincing Plaintiffs "never sought any discovery about the class action waiver."  ECF No. 100 at 1. Nevertheless, the Court will assume the untimeliness of Southwest's production of the Behrens Declaration and proceed with the motion to strike analysis.

that prejudice is presumably cured by further discovery on the issue—for example, deposing Ms. Behrens and asking her questions on Southwest's T&Cs.  Although additional discovery on the T&Cs issue may function to delay an ultimate resolution of this case, it would flesh out the issue and provide Plaintiffs an opportunity to speak on the issue.

### b.   Disruption of Trial

Introduction of the information in the Behrens Declaration minimally impacts this matter's trial schedule because no hard deadlines presently exist concerning class certification briefing nor trial.  So,  although further exploration of the T&Cs issue may delay the case's final resolution, no set trial or pre-trial deadlines will be impacted.  This factor weighs against striking the Behrens Declaration.

### c.   Bad Faith

The Court declines to find Southwest acted in bad faith by raising the T&Cs issue at this stage in the litigation.  Southwest contends the Parties' dispute over the T&Cs issue is "[a]t most, . . . a failure to communicate by the parties: discovery into the class-action waiver was never requested."  ECF No. 100 at 19.  On the other hand, Plaintiffs submit Southwest acted in bad faith by further exploring the T&Cs issue well after the close of disclosure requirements and discovery request deadlines—meanwhile knowing the issue's importance to Plaintiffs' class certification argument.  ECF No. 95 at 11.  But, as stated, the Parties dispute whether Southwest timely and sufficiently identified Ms. Behrens and her knowledge of the T&Cs issue.  *See supra* note 11. Despite the T&Cs issue's early presence in the case, Southwest interpreted Plaintiffs' broad discovery requests as not specifically addressing the T&Cs issue.  Southwest now reintroduces the issue at the class certification stage.  Southwest's belief Plaintiffs did not particularly request

information on the class-action waiver presents a "reasonable explanation" for Southwest's delayed use of the T&Cs issue. *Cf. Aetna*, 2021 WL 949454, at *6 (finding bad faith where the factual record offered "no reasonable explanation" as to why a party contradicted representations made during fact discovery). There is no evidence Southwest's actions—assuming they amounted to a failure to fulfill discovery obligations—were a result of willfulness or bad faith. *Cf. In re TMI Litig.*, 193 F.3d 613, 722 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000) (finding bad faith existed when "the District Court was faced with a pattern of filings that constituted a flagrant violation of pre-trial orders."). This factor weighs against striking the Behrens Declaration.

### d. *The Evidence's Importance to the Proffering Party*

Southwest's use of the Behrens Declaration will ensure the class action waiver issue is fully vetted—and that is not only a benefit to both Parties, but it also ensures that this case is tried on the merits.[12] Indeed, Plaintiffs concede "the Behrens Declaration and its exhibits are aimed at a core issue in this litigation—whether Plaintiffs can bring their claims as a class action." ECF No. 95 at 11. And thus, a contrary decision could produce absurd results: the Court would be turning a blind eye to an issue (the T&Cs class action waiver) that may very well be dispositive of class certification. *See Korea Wk., Inc. v. Got Cap., LLC*, No. CV 15-6351, 2016 WL 3049490, at *2 (E.D. Pa. May 27, 2016) (J. Kearney) (denying class certification because the parties waived their right to assert any claims in a class action and the waivers were not unconscionable). The

---

[12] *See* 8/12/22 Ltr. at 5 ("Plaintiffs don't want discovery . . . they want a punitive 'remedy' that avoids the facts and a proper legal determination on the merits."). The Court notes the T&Cs were not entirely absent from discovery. For example, in their interrogatory responses, Plaintiffs stated that they did not "lack . . . access" to the T&Cs when they purchased their airline tickets. ECF No. 100 at 7-8.

importance of the T&Cs issue to class certification weighs against striking the Behrens Declaration.

B. <u>Call Transcripts</u>

Second, the Parties dispute whether Southwest violated the Federal Rules of Civil Procedure and the Court's Order by not producing the Call Transcripts within discovery deadlines. But even assuming Southwest violated discovery by not producing the Call Transcripts, the Third Circuit's five factors do not weigh in favor of striking the Call Transcripts due to their minimal prejudicial affect and ability to cure without great disruption to the case's trial deadlines.

a. *Prejudice & Ability to Cure*

Plaintiffs argue Southwest's delayed introduction of the Call Transcripts prejudices Plaintiffs by requiring them to prepare their class certification brief ahead of the deadline without an opportunity to review the transcripts. Plaintiffs argue curing this prejudice will cause Plaintiffs further accrual of their time, resources, and money, and will ultimately disrupt the orderly and efficient trial of the case. ECF No. 96 at 20-21. Southwest argues it introduced the Call Transcripts to specifically rebut Plaintiffs' frustration argument, so the transcripts are minimally relevant— and thus minimally prejudicial—to Plaintiffs' case. Nevertheless, Southwest provides any prejudice can be cured without disruption of the trial in this case because Southwest is willing to work with Plaintiffs to provide them with larger samples of call transcripts. And, as stated concerning the Behrens Declaration, the Court has held further briefing on the class certification issue in abeyance, and no hard deadlines exist concerning resolution of the class certification issue, nor trial. This factor weighs against striking the Call Transcripts.

### b.   Disruption of Orderly and Efficient Trial of the Case

Plaintiffs argue Southwest's use of the Call Transcripts would necessitate reopening discovery and thus delay the case's class certification phase and the merits of the case from proceeding to trial.  But, as stated, the Court's flexible deadlines at this moment in the litigation prevent severe disruption.  The Court finds this factor does not weigh in favor of striking the Call Transcripts.

### c.   Bad Faith or Willfulness

Next, Plaintiffs contend Southwest's untimely disclosure and statement it couldn't "easily, efficiently, and systematically identify persons who requested a refund" shows bad faith.  ECF No. 104 at 6.  Further, Plaintiffs allege the Class Transcripts were not made relevant by Plaintiffs' frustration argument, but, instead, were always relevant to Plaintiffs' allegations class members sought refunds and were not given that option.  *Id.* at 5.  On the other hand, Southwest emphasizes it communicated its possession of these records and its ability to produce call transcripts—it even produced other call transcripts within the discovery deadlines.[13]  Thus, Southwest's production of the Call Transcripts to highlight each caller's individual experience—in direct response to Plaintiffs' frustration argument—presents a "reasonable explanation" for the timing of the Call Transcripts production.  See *Aetna*, 2021 WL 949454.  And further, the Court finds no evidence of Southwest's bad faith in producing the Call Transcripts.

---

[13] *See* ECF No. 100 at 23; *see also* ECF No. 100-1, Ex. 1 at 4-5.  Although Southwest admits it never explicitly provided it could identify call records for persons who were on certain cancelled flights, Southwest claims Plaintiffs did not ask for this particular information.  ECF No. 100 at 26.

*d.  Importance of the Evidence to the Proffering Party*

The Court is persuaded by Southwest's contention the Call Transcripts are important to refute Plaintiffs' argument for common evidence of frustration because the transcripts show individualized issues among potential plaintiffs.  The Court notes Plaintiffs do not dispute the Call Transcripts' importance to Southwest.  This factor weighs against striking Southwest's use of the Call Transcripts.

C.  Passenger Data

Lastly, Plaintiffs seek to strike Southwest's use of its Passenger Data containing last names of Southwest passengers and purchasers.  Southwest does not refute its delayed production of the Passenger Data but argues the information is only minimally prejudicial to Plaintiffs because it builds on information Southwest previously provided.  Further, Southwest contends it produced the Passenger Data in response to Plaintiffs' changed class definition.

*a.  Prejudice & Ability to Cure*

Plaintiffs contend Southwest's use of the Passenger Data will cause resolution of their Motion for Class Certification to be significantly delayed because discovery will need to reopen to give Plaintiffs an opportunity to inquire about the data.  ECF No. 96 at 22.  Southwest counters that there are various ways to cure any prejudice resulting from the Passenger Data, such as Southwest answering Plaintiffs' questions on the data, Plaintiffs asking Southwest's experts about the data in deposition, and Plaintiffs' ability to assess the data and respond in a rebuttal report on class certification.  ECF No. 100 at 22.  The Court finds Southwest's cure proposals convincing.  Although Plaintiffs were not provided an opportunity to review this data before filing their class

certification motion, the case's flexible deadlines present opportunities to cure resulting prejudice. These factors thus do not lean in favor of striking Southwest's use of the Passenger Data.

### b. *Disruption of Orderly and Efficient Trial of the Case*

As repeatedly stated, the lack of firm deadlines concerning a class certification hearing and trial in this matter prevent significant disruption of this case. This factor weighs against striking the Passenger Data.

### c. *Bad Faith or Willfulness*

In examining the fourth factor, Plaintiffs claim Southwest's "untimely disclosure of the Passenger Data exhibits bad faith." ECF No. 104 at 6. But Southwest provides—after "reasonably objecting" to Plaintiffs' initial request for passenger names—they offered the Passenger Data to counter Plaintiffs' changed class definition. ECF No. 100 at 22. Although Southwest's production was untimely and its justification alone does not warrant use of the Passenger Data, the record does not suggest Southwest acted in bad faith. *See Cmty. Ass'n Underwriters of Am., Inc. v. Rhodes Dev. Grp., Inc.*, No. 1:09-CV-0257, 2013 WL 3510714, at *4 (M.D. Pa. July 11, 2013) ("[N]otwithstanding the court's displeasure with the untimely production of the Report, and dissatisfaction with Plaintiff's explanation given in support thereof, the court does not detect any bad faith on the part of Plaintiff."). This factor also weighs against striking the Passenger Data.

### d. *Importance of the Evidence to the Proffering Party*

Lastly, the Court finds Southwest's arguments persuasive that the Passenger Data is useful at the class certification stage. Plaintiffs' proposed definition of the class is a critical issue at this point in the litigation. And Southwest endeavors to use the Passenger Data to show a distinction

between its passengers and purchasers—categories of customers used by Plaintiffs in forming a potential class of plaintiffs.  This factor also weighs against striking the data.

## IV.    CONCLUSION

The Court does not find striking Southwest's use of the Behrens Declaration, Call Transcripts, and Passenger Data is warranted given the ability of the Parties to cure any prejudice to Plaintiffs, the minimal disruption to the matter's pre-trial and trial proceedings, and the importance of the evidence to Southwest.  Accordingly, the Court denies Plaintiffs' Motion to Strike concerning these matters.  The Court intends to conference with the Parties to discuss the scope—and related deadlines—of any limited discovery necessary to cure the alleged deficiencies raised by Plaintiffs.

An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

16