IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADRIAN BOMBIN, *et al.*, : | |
|     Plaintiffs, : | |
| : | |
| v. : | Civil No. 5:20-cv-01883-JMG |
| : | |
| SOUTHWEST AIRLINES CO., : | |
|     Defendant. : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                                       **March 27, 2023**

       Plaintiffs Adrian Bombin and Samantha Rood, on behalf of themselves and all others similarly situated, allege Defendant Southwest Airlines Co. breached a contract between the Parties. *See generally* Am. Compl., ECF No. 14. More specifically, Plaintiffs allege Southwest's failure to provide the option of a monetary refund upon flight schedule modifications amounted to a breach of contract. Pls.' Mem. in Supp. of Pls. Mot. for Class Certification, ECF No. 71-2 at 3 (sealed). Plaintiffs proffer the opinions and testimony of Dr. Christopher J. Bennett, Ph.D., an expert in the field of economics, in support of their Motion for Class Certification. Before the Court is Southwest's Motion to Exclude Testimony of Dr. Bennett under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). For the following reasons, Southwest's motion will be denied.

**I. FACTUAL BACKGROUND**

       In February of 2020, Bombin booked a flight from Maryland to Cuba through Southwest's mobile application. Am. Compl., ECF No. 14 ¶26. That same month, Rood purchased two Southwest tickets for travel from California to Arizona. *Id.* ¶31. By March, however, COVID-19 had been declared a global pandemic, and the United States started implementing travel

restrictions. *Id.* ¶¶ 7–8. Faced with the virus and declining consumer demand, Southwest changed its flight schedules. *Id.* ¶¶13–15. In particular, it canceled Bombin's flight to Cuba, and rescheduled Rood's flight to Arizona three separate times. *Id.* ¶¶ 28, 33–39.

Upon learning of the cancellation, Bombin called Southwest's customer service department to gain more information. *Id.* ¶28. He requested a refund, which Southwest denied. *Id.* ¶29. Instead, Southwest offered Bombin credit toward a future flight (called an "RTF"). *Id.* ¶¶29–30; *see also* Pls.' Resp. in Opp'n to Defs. Mot. to Exclude, ECF No. 133 at 5. Rood was similarly offered an RTF travel credit in lieu of a refund. ECF No. 14 ¶¶34, 37, 40. (sealed).

Bombin and Rood allege that Southwest breached its Contract of Carriage by refusing to offer refunds for their flights. *Id.* ¶19. Section 9 of the Contract of Carriage provides in relevant part:

> a. Failure to Operate as Scheduled
>
> (1) Canceled Flights or Irregular Operations. In the event Carrier cancels or fails to operate any flight according to Carrier's published schedule, or changes the schedule of any flight, Carrier will, at the request of a Passenger with a confirmed Ticket on such flight, take one of the following actions:
>
>> (i) Transport the Passenger at no additional charge on Carrier's next flight(s) on which space is available to the Passenger's intended destination, in accordance with Carrier's established reaccommodation practices; or
>>
>> (ii) Refund the unused portion of the Passenger's fare in accordance with Section 4c.

Am. Compl. Ex. A, ECF No. 14 at 66. Southwest's Customer Service Commitment, a document which is incorporated by reference in the Contract of Carriage, further provides that, in the event Southwest changes a flight schedule more than seven days before departure, customers "will have

2

the option to select the revised itinerary, choose an alternate flight/date within a 14-day parameter of [their] original travel, or cancel [their] trip without penalty and receive a refund issued to the original form of payment." Am. Compl. Ex. B, ECF No. 14 at 73. Bombin and Rood assert that these provisions, taken together, afford customers the discretion to select a refund due to a scheduling change. ECF No. 14 ¶¶ 46–47. In other words, Southwest cannot unilaterally decide to offer RTF travel credits in this situation.

### a. Plaintiff's Motion for Class Certification

On April 22, 2022, Plaintiffs moved for class certification.[1] Plaintiffs contend they satisfy the Federal Rule of Civil Procedure 23 requirements for class certification, such as the Rule 23(a) requirements—numerosity, commonality, typicality, and adequacy—and the Rule 23(b) requirements—namely, "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. PRO. 23(b); *see also*

---

[1] *See generally* Mot. to Certify Class, ECF No. 71. Plaintiff offers Dr. Bennett as an expert in support of Plaintiffs' Motion for Class Certification. *See id.* at 2. Federal district courts in Pennsylvania have considered whether challenged expert testimony satisfies the standard set out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) before proceeding to the merits of class certification claims. *See e.g.*, *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2015 WL 5767415, at *3 (E.D. Pa. July 29, 2015); *In re Processed Egg Prod. Antitrust Litig.*, 81 F. Supp. 3d 412, 415 (E.D. Pa. 2015) (" . . . the general consensus appears to be that the Court should subject expert witnesses to Daubert scrutiny at the class certification stage of the litigation.") (internal citations omitted); *Bernard v. BNY Mellon, N.A.*, No. 2:18-CV-00783-RJC, 2022 WL 376999, at *3 (W.D. Pa. Feb. 7, 2022) ("[T]he United States Court of Appeals for the Third Circuit has held that a plaintiff cannot rely on challenged expert testimony, when critical to class certification, to demonstrate conformity with Rule 23 unless the plaintiff also demonstrates, and the trial court finds, that the expert testimony satisfies the standard set out in Daubert.") (quoting *In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig.*, 421 F. Supp. 3d 12, 33 (E.D. Pa. 2019), *aff'd sub nom. In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*, 967 F.3d 264 (3d Cir. 2020) (internal citations omitted)); *In re Chocolate Confectionary Antitrust Litig.*, 289 F.R.D. 200, 208 (M.D. Pa. 2012). Accordingly, the Court provides an overview of Plaintiffs' arguments in favor of class certification to support the Court's analysis of Dr. Bennett's sufficiency under *Daubert*.

Fed. R. Civ. Pro, 23(a).

First, Plaintiffs contend, under Rule 23(b), "[c]ommon questions of law and fact predominate as to Plaintiffs' straightforward breach of contract claim." ECF No. 71-2 at 6 (citation omitted). Plaintiffs further aver, "[t]h[e] common contract language [at issue] presents the same question for the entire Class: does the Contract require that Southwest give passengers the option of a monetary refund when Southwest initiates a Cancellation or Schedule Change?"[2] So "[a]t the merits stage, Plaintiffs will present evidence to show that Southwest [breached the contract by] automatically issu[ing] or offer[ing] monetary refunds when Southwest Network Planning initiated flight Cancellations and Scheduling Changes." ECF No. 71-2 at 5.

Plaintiffs identify several elements of their claims to show common questions of law and fact predominate. For example, Plaintiffs aver: (1) a single contract "uniformly governs Southwest's obligations to putative Class Members when it fails to operate a flight on schedule[,]" *id.* at 8; (2) common evidence supports Plaintiffs' claim Southwest breached its contract with customers by uniformly providing customers RTFs, *id.* at 10; (3) Southwest underwent "a common source of conduct [concerning customer service practices]" supporting a finding of predominance, *id.* at 12; (4) "common evidence shows that Southwest's intentional and systematic practice was to offer an RTF instead of a refund to the original form of payment[,]" *id.* at 14-15; and (5) and

---

[2] *Id.* at 5. Plaintiffs provide definitions for "Schedule Change[s]" and "Cancellation[s]" in their Motion for Class Certification. Plaintiffs define a "Schedule Change" as "a change of more than 15 minutes made by Southwest more than 10 days in advance of the originally scheduled flight (i.e. a Schedule Change made by Southwest's Network Planning). ECF No. 71 at 1 n.3. And Plaintiffs define a "Cancellation" as "a cancellation made by Southwest more than 10 days in advance of the originally scheduled flight date (i.e. Cancellations made by Southwest's Network Planning)." *Id.* at 1 n. 2. Plaintiffs utilize these definitions throughout their Motion for Class Certification, *see generally* ECF No. 71-2, and their Motion in Opposition of Defendant's Motion to Exclude Testimony of Dr. Bennett Under *Daubert*, ECF No. 133 at 5 n. 1.

4

Southwest's anticipated defenses involve a "class-wide question." *Id.* at 16-17.

To further support its Rule 23(b) predominance claim, Plaintiffs submit "[t]he Class is ascertainable." *Id.* at 15. Plaintiffs contend the Class is ascertainable because it "is defined by objective criteria" and "Southwest's own detailed records, including its databases for flights and ticket information for such flights . . . can be used to identify the passengers." ECF No. 71-2 at 18. And further, Plaintiffs "measure of compensatory damages—a refund to the original form of payment and interest— . . . matches their theory of liability that Southwest owed Class Members refunds instead of the credits they provided . . . ." *Id.* at 19. Plaintiffs rely on their expert, Dr. Bennett, to aver "[t]he amount of refunds and interest Southwest owes each Class Member can be determined on a class-wide basis using Southwest's records." *Id.* at 20 (citing Expert Report of Christopher J. Bennett, Ph.D., ECF No. 72 at 1-2, 21-23).

Lastly, Plaintiff contends their claims satisfy Rule 23(a)'s requirements because the class is sufficiently numerous, *id.* at 20; Plaintiffs "identified questions with common answers that would 'resolve an issue that is central to the validity of each one of the claims in one stroke,'" *id.* at 21 (quoting *Walmart v. Dukes*, 564 U.S. 338, 564 (2011)); typicality is satisfied because Plaintiffs' claims arise of the same course of conduct, rely on the same legal theories, and are governed by one contract, *id.* at 22-23.; the representative parties are adequate, *id.* at 23-24; and a class action is a superior method of adjudication due to class members' "relatively small value claims[,]" *id.* at 24.

Defendant Southwest opposes Plaintiff's Motion for Class Certification.[3]

---

[3] As further discussed *infra* at 12, the Court looks to whether <u>Plaintiffs'</u> expert supports and is consistent with <u>Plaintiffs'</u> theories—not those of Defendants—at this stage. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). Accordingly, the Court does not provide an in-depth overview of Defendants' arguments in opposition to class certification.

### b. **Plaintiffs' Expert in Support of Class Certification**

Plaintiffs' proffer the opinions and testimony of Dr. Christopher J. Bennett, Ph.D. in support of their Motion for Class Certification. Dr. Bennett provides opinions and testimony concerning his methodology of identifying members of Plaintiffs' proffered class and determining economic damages on a class-wide basis. *See* ECF No. 72 at 4-5. Dr. Bennett's qualifications include, inter alia, his role as a Partner in an economic consulting firm; "more than ten years of experience as an economist working in the areas of data analysis, statistics, financial modeling, and econometrics[;]" a Ph.D. and M.A. degree in Economics; experience researching and teaching subjects related to economics; and conducting "academic research . . . focused on the development and application of statistical methods in finance and economics." *Id.* at 6.

In general, Dr. Bennett's testimony provides Southwest's data can be used to "(i) identify the members of the Class; and (ii) determine economic damages on a Class-wide basis." *Id.* at 5. Dr. Bennett details the methodology behind his opinions. Concerning class member identification, Dr. Bennett provides "key requirements [of the class definition] and . . .other[] [elements] of the Class definition can be verified from the Teradata and UFR Databases maintained by Southwest and . . . these databases can be used to identify all members of the class." *Id.* at 18. He describes, more specifically, how he uses Southwest's data to identify Affected Flights, then those passengers scheduled to travel on Affected Flights, and whether those passengers meet the other elements of Plaintiffs' proffered class definition.[4]

And concerning damages, Dr. Bennett assumed, at the direction of Plaintiffs' counsel, "Southwest breached its Contract with Class members when Southwest failed to notify passengers

---

[4] *See id.* at 18-25. Dr. Bennett provides, "The Set of Affected Flights is comprised of flights that Southwest either Cancelled during the Cancellation Class Period or initiated a Schedule Change for during the Schedule Change Class Period." *Id.* at 20.

of their refund rights . . . and then first provided those passengers with an RTF instead of refunding the money they paid for the Affected Flights." *Id.* at 29. Dr. Bennett then provided a methodology of determining class-wide economic damages consisting of "two parts: (i) the money paid for the tickets associated with their Affected Flights that has not been refunded . . . ; and (ii) accrued interest on the Refund Amount using a simple interest rate of five percent per annum from the day on which Southwest issued the RTF for the Affected Flight through the day on which Southwest issued/s the Refund Amount or the Court issues the judgment . . . ." *Id.* at 30. Dr. Bennett also identified the relevant information to calculate damages for each class member and provided sample calculations for Rood and Bombin. *Id.*

### c. **Defendant's Motion to Exclude Testimony of Dr. Bennett under *Daubert***

Southwest moves to exclude Dr. Bennett's testimony under *Daubert* because "Dr. Bennett's methodologies are irrelevant and unreliable for several reasons." Def.'s Mot. to Exclude Testimony of Christopher J. Bennett Under *Daubert*, ECF No. 89 at 3. Southwest does not contest Dr. Bennett's qualifications to provide testimony. Nevertheless, Southwest avers, inter alia, (1) Dr. Bennett's damages methodology is irrelevant and unreliable because it is contrary to established law, (2) Dr. Bennett's damages methodology is unreliable because it assesses damages on behalf of uninjured class members, and (3) Dr. Bennett cannot reliably identify individuals who meet Plaintiffs' class definition. *See generally id.*

In response, Plaintiffs provide "Dr. Bennett's opinions directly correspond to Plaintiffs' theory that Southwest breached its Contract when it issued credits . . . to Class Members even though the Contract guaranteed a monetary refund, and not an RTF, if a Class Member did not select re-accommodation via alternative travel." ECF No. 133 at 5. And further, Plaintiffs aver "Dr. Bennett's testimony will assist the trier of fact by demonstrating that it is feasible to use

7

Southwest's Teradata and UFR databases (the 'Databases') to identify Class Members with certain characteristics: Southwest passengers who held Wanna-Get-Away tickets for a flight affected by a Southwest-initiated Cancellation or Schedule Change and to whom Southwest issued credits (RTFs) instead of refunds to the original form of ticket payment." *Id.* (internal citations omitted). And "the Bennett Report aptly explains how the amount owed for such refunds and interest can be calculated using Southwest's Databases to identify (i) the amount originally paid in cash for the relevant ticket as well as whether the improperly issued RTF remains unused, and (ii) the interest accrual date (which is simply the RTF issuance date)." *Id.* at 6 (internal citation omitted). Thus Plaintiffs contend Dr. Bennett's testimony is reliable and relevant to Plaintiffs' theories at the class certification stage.

## II.   LEGAL STANDARDS

Plaintiffs acknowledge they must satisfy certain elements to obtain class certification under Federal Rules of Civil Procedure 23(a) and (b)(3). *See* Pls.' Mot for Class Cert., ECF No. 71-2 at 3-14, 18-22. Specifically, "Rule 23(a) requires a class meet prerequisites set forth by that rule, referred to as numerosity, commonality, typicality, and adequacy." *Bernard v. BNY Mellon*, N.A., No. 2:18-CV-00783-RJC, 2022 WL 376999, at *3 (W.D. Pa. Feb. 7, 2022). And "Rule 23(b)(3) provides that a class action may only be maintained where 'the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Id.*

"The United States Supreme Court has strongly suggested that a full examination pursuant to the decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), is necessary prior to class certification." *In re Suboxone (Buprenorphine*

*Hydrochloride & Nalaxone) Antitrust Litig.*, 421 F. Supp. 3d 12, 33 (E.D. Pa. 2019), *aff'd sub nom. In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*, 967 F.3d 264 (3d Cir. 2020) (citing *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 354 (2011) (internal quotation omitted)). And, "[i]nterpreting *Dukes*, the United States Court of Appeals for the Third Circuit has held that 'a plaintiff cannot rely on challenged expert testimony, when critical to class certification, to demonstrate conformity with Rule 23 unless the plaintiff also demonstrates, and the trial court finds, that the expert testimony satisfies the standard set out in Daubert.'" *Id.* (quoting *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015)).

Under *Daubert*, district courts are tasked to be the gatekeepers of expert testimony. *Daubert*, 509 U.S. at 589; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); FED. R. EVID. 702. Before testimony can reach the jury under the cloak of expertise, the Court must evaluate it for three criteria: qualification, reliability, and fit. *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832 (3d Cir. 2020).

A witness is *qualified* to provide expert testimony only if the witness has "specialized expertise" in the testimony's subject matter. *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). A witness's testimony is *reliable* only if it is founded upon "good grounds." *UGI Sunbury LLC*, 949 F.3d at 834; FED. R. EVID. 702 (requiring expert testimony be "based on sufficient facts or data" and be derived from "reliable principles and methods" that have been "reliably applied . . . to the facts of the case."). The U.S. Court of Appeals for "[t]he Third Circuit has interpreted 'reliability' to mean that an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." *Elgert v. Siemens Indus., Inc.*, No. CV 17-1985, 2019 WL 1294819, at *5 (E.D. Pa. Mar. 20, 2019) (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) (internal citations omitted)). And lastly, a

witness' testimony *fits* a case only if it would help the trier of fact to understand the evidence or determine a fact in issue. *UGI Sunbury*, 949 F.3d at 835 (quoting FED. R. EVID. 702); *see also United States v. Ford*, 481 F.3d 215, 219 n.6 (3d Cir. 2007) ("[F]it is [primarily] a relevance concern.") (internal quotation marks omitted).

The burden to establish each requirement by a preponderance of the evidence rests with the party offering the expert testimony. *See Padillas v. Stork–Gamco, Inc.,* 186 F.3d 412, 418 (3d Cir.1999). Nevertheless, the U.S. Court of Appeals for the Third Circuit has found the Rules of Evidence reflect a liberal policy of admissibility, even for expert testimony. *Pineda*, 520 F.3d at 243 (internal citations omitted). In fact, "The Rules of Evidence embody a strong and undeniable preference for admitting any evidence which has the potential for assisting the trier of fact." *Takeda Pharms. USA, Inc. v. Spireas*, No. CV 17-0452, 2019 WL 9596536, at *1 (E.D. Pa. Sept. 4, 2019) (citing *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997) (citations omitted)). "As the Supreme Court in *Daubert* stated: 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (citing *Daubert*, 509 U.S. at 595).

## III.   DISCUSSION

Southwest raises several challenges concerning the reliability and relevancy of Dr. Bennett's testimony and opinion.[5] More specifically, Southwest avers Dr. Bennett's testimony should be excluded because his damages methodology is: (1) irrelevant and unreliable because it is contrary to recoverable damages under Texas law; (2) unreliable because it assesses damages

---

[5] Southwest does not, however, contest Dr. Bennett's qualifications to provide an expert opinion.

10

for uninjured class members and those whose breach was cured; and (3) unreliable because it is overinclusive in its identification of class members. *See generally* ECF No. 89. The Court will address Southwest's arguments in seriatim.

### a. Dr. Bennett's Testimony is Not Irrelevant and Unreliable Based on Plaintiffs' Proffered Class Definition and Theories of Breach.

First, Southwest contends Dr. Bennett's damages methodology is irrelevant and unreliable because it is contrary to recoverable damages under Texas law.[6] Southwest describes Plaintiffs' requested damages as "expectancy damages in the form of a refund to the original form of payment used to purchase tickets through Southwest." ECF No. 89 at 8. And, as stated, Dr. Bennett provides a "a methodology for determining economic damages on a Class-wide basis for . . . passengers" fitting Plaintiffs' proffered criteria for the class. ECF No. 72 at 29 (unredacted) (sealed). Dr. Bennett's proffered economic damages to each class member consist of two parts: (i) the refund amount, and (ii) accrued interest. *Id.* at 30.

Southwest submits Dr. Bennett's damages calculation is inadmissible because it fails to consider the value of ECFs already provided to passengers.[7] And expectancy damages, like those put forward by Dr. Bennett, are calculated by "the difference between the value as represented and the value as received." ECF No. 89 at 8 (citing *Sacks v. Hall*, 481 S.W.3d 238, 246 (Tex. App. 2015)). Thus, Southwest contends Dr. Bennett's proposal would impermissibly put Plaintiffs in a

---

[6] The Court notes the Parties do not dispute Texas law applies to the contract at issue. *See e.g.*, *id.* at 8 n. 2; ECF No. 71-2 at 19 n. 10 (sealed) (applying Texas law to Plaintiffs' damages calculation).

[7] ECF No. 89 at 8 (describing Plaintiffs requested relief as "expectancy damages because their purpose is to put passengers in the same economic position as they would have been in had Southwest complied with what Plaintiffs contend were its contractual obligations") (internal citations omitted)).

11

better position than if the contract had been performed because it allows Plaintiffs "to recover the fare's full price with interest in addition to the RTF they had previously been given."[8]

The Court finds persuasive Plaintiffs' averment Dr. Bennett's methodology matches Plaintiffs' legal theory and thus assists the trier of fact. In an antitrust class action, the United States Supreme Court has found "at the class-certification stage . . . any model supporting a 'plaintiff's damages case must be consistent with **its** liability case . . . ." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (emphasis added) (internal citations omitted). So Plaintiffs' damages, and thus Dr. Bennett's damages methodology, must be consistent with Plaintiffs' theory. Southwest's contentions with the merits of Plaintiffs' theory are more appropriately raised in opposition to Plaintiffs' Motion for Class Certification.

Here, Dr. Bennett's damages methodology is consistent with Plaintiffs' class definition and requests for relief. First, Plaintiffs aver they "do not claim that Class Members should recover damages (Refund Amount and Accrued Interest) and keep those amounts as RTFs." ECF No. 133 at 14 (emphasis added). "Rather, Plaintiffs assert, and Dr. Bennett agrees, that the amount of the RTFs should be commensurately extinguished when the refund damages are awarded in the amount equal to that paid in dollars for the initial fare." *Id.* And, furthermore, Plaintiffs' class definition only includes individuals who "[d]id not redeem any part of their RTF with Southwest (e.g. or travel or loyalty points) as of the date of the Court's Order Granting Class Certification."

---

[8] *Id.* at 9 (emphasis added) (citing *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991)); *see also Emps. Ret. Sys. Of Texas v. Putnam*, LLC, 294 S.W.3d 309, 321 (Tex. App. 2009))  And thus, Southwest avers Dr. Bennett's theory of damages is inadmissible because it is contrary to Texas law. ECF No. 89 at 9 ( " . . . if Plaintiffs prevail in this case, and were to recover the fare's full price with interest in addition to the RTF they had previously been given, they would recover more than their actual damages, which is impermissible in Texas law on expectancy damages.") (citing *Phillips*, 820 S.W.2d at 788).

ECF No. 72 at 4. Because Dr. Bennett's methodology, like Plaintiffs' theory, (1) excludes class members who have redeemed any part of their RTFs, and (2) extinguishes or removes any value of the RTF (which, Dr. Bennett asserts, is possible using Southwest's data), Plaintiffs would not be left overcompensated.[9] Thus Southwest's averment Dr. Bennett's methodology is contrary to law is not persuasive.[10] The Court declines to find Dr. Bennett's opinion should be excluded for relevancy and reliability on this basis.

### b. Dr. Bennett's Proffered Damages Methodology is Not Unreliable Because It Assesses Damages According to Plaintiffs' Theory of Injury.

Second, Southwest submits Dr. Bennett's damages methodology is unreliable because it assesses damages on behalf of uninjured class members. ECF No. 89 at 10-12. Specifically,

---

[9] At this stage in the present matter, the Court also finds persuasive Plaintiffs' contention Dr. Bennett's damages methodology is proper because it is consistent with Plaintiffs' theory of breach of contract. Plaintiffs' claim the contract at issue only provides for two contractually-specified remedies: a refund or a re-accommodation on another flight. ECF No. 133 at 14-15. So, under Plaintiffs' theory of breach, the RTFs provided to passengers have no value because they fall outside the contract's required remedies. *See id.* Therefore, Southwest's "extra-contractual" RTF remedy "has no legal effect []apart from breach" *Id.* n. 7. Consistent with this theory, Dr. Bennett's damages methodology would return class members "to the position they should have been in had Southwest not breached by issuing RTFs." *Id.* at 15.

[10] The Court notes Southwest also takes issue with Plaintiffs' claim they will extinguish the value of RTFs. Southwest contends the extinguishing of RTFs is a new argument, and amounts to recission which must be pled. Def.'s Reply in Supp. of its *Daubert* Mot., ECF No. 140 at 4. Southwest submits Plaintiffs sought a "refund to the original form of payment and interest" in their Motion for Class Certification, ECF No. 71-2 at 15 (emphasis added), and now specify "damages will be paid to the real parties in interest through a judgment—rather than through a refund to the original form of payment," ECF No. 133 at 13 (emphasis added). But criticisms of Plaintiffs' requested damages and underlying theories will be considered with the merits of Plaintiffs' Motion for Class Certification. In the context of the present *Daubert* motion, the Court finds Dr. Bennett's opinion is not inconsistent with Plaintiff's theory of damages in their Motion for Class Certification, which provides all "passengers" (notably, not purchasers, which would require a form of payment) who meet the qualifications of the defined class would receive the requested damages. ECF No. 71-2 at 5. Any discrepancy between Plaintiffs' earlier refund theory and their present judgment theory concerns the manner through which Plaintiffs would receive damages. And further, the Court shall not consider the merits or substance of Plaintiffs' request for damages; this issue is better saved for the Court's decision on class certification.

Southwest identifies three types of class members included in Dr. Bennett's opinion who have no injury: (1) passengers who did not purchase the ticket; (2) passengers who would have still selected an RTF even if they were notified of a refund option; and (3) those who received an RTF as a result of their own decision to self-cancel a flight (not as a result of a schedule change by Southwest). *See generally id.* But Southwest's challenges go to the weight and accuracy of Dr. Bennett's testimony, not his reliability.

The class members identified by Dr. Bennett and considered "uninjured" by Southwest are consistent with Plaintiffs' theory of class-wide injury under their theory of breach. *See Comcast*, 569 U.S. at 35 (2013) (internal citations omitted). Plaintiffs contend "the Contract, which is evidence common to the Class, confirms that, when a passenger is not also the purchaser, it is the passenger, not the purchaser, who is a party to the Contract." ECF No. 133 at 16 (internal citations omitted). And, as stated, Plaintiffs claim the contract at issue only provides for two contractually-specified remedies: a refund or a re-accommodation on another flight. *Id.* at 14-15. So, upon receiving an "extra-contractual" RTF, " . . .under Plaintiffs' theory, all Class Members have suffered injury as Southwest's Contract promised the option between two guaranteed remedies." *Id.* at 17. Therefore, Dr. Bennett's methodology sufficiently identifies and assesses damages for class members who may possess injuries consistent with Plaintiffs' theory of liability. The Court declines to find Dr. Bennett's methodology unreliable because Southwest contests Plaintiffs' theories of liability and injury.

The Court is further persuaded by the district court's findings in *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2015 WL 5767415 (E.D. Pa. July 29, 2015). In *In re Mushroom*, when considering a motion to exclude expert opinions, the district court found "how many putative class members [an expert's] model indicates were actually injured goes to the

sufficiency of [their] evidence on class certification rather than whether his . . . methodologically 'fit' the 'purposes of the case' at the *Daubert* stage." *In re* Mushroom, 2015 WL 5767415, at *15 (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 743 (3d Cir.1994)).  And, like the district court found in *In re Mushroom*, Dr. Bennett's damages methodology using Southwest's data systems "clearly have more than 'bare relevance' methodologically to the issue . . . , even if [it] might not ultimately show that all or nearly all class members were impacted at a later stage of the litigation." *Id.*  Dr. Bennett's use of Southwest's data to identify class members and create a damages methodology is sufficiently relevant to the questions of commonality and predominance and will assist the Court in evaluating the merits of Plaintiffs' Motion for Class Certification.

### c. Dr. Bennett's Methodology for Identifying Class Members is Not Unreliable as Overinclusive.

And finally, Southwest similarly contends Dr. Bennett's methodology does not reliably identify class members.  Southwest avers Dr. Bennett's methodology is not reliable to identify class members because it is "grossly inclusive" and "Southwest's expert has shown that 32 of those 84 purported class members do not actually meet the class definition in at least one of three ways." ECF No. 89 at 12.  And, Southwest avers, "the class is limited to persons residing in the United States, and Dr. Bennett makes no attempt to identify those individuals." *Id.*  Southwest categorizes Dr. Bennett's methodology as overbroad and thus unreliable because it includes "individuals issued tickets on affected flights after Southwest changed the flight; individuals who voluntarily removed themselves from flights before Southwest cancelled or changed the affected flight; individuals with tickets changed to different flights before Southwest canceled or changed affected flights; and Dr. Bennett failed to verify the residency of potential class members. *Id.* at 11-12.

15

On the other hand, Plaintiffs contend both Parties' experts "agree that . . . [Dr. Bennett's] illustrative example should be corrected so that only passengers who were scheduled to fly on an Affected Flight at the same time that Southwest caused a Cancellation or Schedule Change, and who were then issued in RTF, are identified as Class Members." ECF No. 133 at 21 (internal citations omitted). In fact, Plaintiffs aver, Southwest's confirmation its data can identify passengers who were scheduled on the flight prior to, as well as after a cancellation or schedule change shows the data will help correctly identify this condition of Plaintiffs' class. *Id.* (internal citations omitted).

Once again, Defendant misconstrues the standards of reliability and fit at this stage. A witness's testimony is reliable if it is founded upon "good grounds." *UGI Sunbury LLC*, 949 F.3d at 834; FED. R. EVID. 702 (requiring expert testimony be "based on sufficient facts or data" and be derived from "reliable principles and methods" that have been "reliably applied . . . to the facts of the case."). And "[t]he evidentiary requirement of reliability is lower than the merits standard of correctness." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994). Furthermore, a witness' testimony fits a case if it would help the trier of fact to understand the evidence or determine a fact in issue. *UGI Sunbury*, 949 F.3d at 835 (quoting FED. R. EVID. 702).

Here, Dr. Bennett sufficiently describes his methodology for using Southwest's data to identify affected flights, passengers scheduled to travel on affected flights, and whether they are "Class-Eligible Passengers" who fit Plaintiffs' proposed class definition. ECF No. 72 at 18-19. Southwest's contention Dr. Bennett includes purported class members that do not actually meet the class definition goes to the accuracy of his findings and not the reliability of his methodology. *See Paoli*, 35 F.3d at 744 ("As *Daubert* indicates, '[t]he focus ... must be solely on principles and methodology, not on the conclusions that they generate.'") (quoting *Daubert*, 509 U.S. at 580).

And Dr. Bennett's willingness to correct certain aspects of his report based on additional information provided by Southwest and its expert will not bar his testimony and opinion. *See e.g. Crowley v. Chait*, 322 F. Supp. 2d 530, 540 (D.N.J. 2004) ("*Daubert* does not require that an expert's testimony be excluded simply because he admitted and corrected his own mistakes . . . . In fact, one of the very purposes of a *Daubert* hearing, discussed above, is to give experts a chance to explain and even correct errors that they made in their reports."). Therefore, Dr. Bennett's opinion and testimony is sufficiently reliable and will assist the trier of fact in determining whether Plaintiffs' proposed damages calculation and identification of class members can be performed using information in Southwest's databases.

## IV.   CONCLUSION

The Court finds Dr. Bennett's opinion and testimony sufficiently reliable and relevant at this stage in the present action. Accordingly, preclusion of his opinion is not warranted under *Daubert*.

An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge