**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ADRIAN BOMBIN, *et al.,* : | |
| Plaintiffs, : | |
| : | |
| v. : | Civil No. 5:20-cv-01883-JMG |
| : | |
| SOUTHWEST AIRLINES CO., : | |
| Defendant. : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                    **September 7, 2023**

Plaintiffs Adrian Bombin and Samantha Rood, on behalf of themselves and all others similarly situated, allege Defendant Southwest Airlines Co. breached a contract between the Parties. *See generally* Am. Compl., ECF No. 14. More specifically, Plaintiffs allege Southwest's failure to provide the option of a monetary refund upon flight schedule modifications amounted to a breach of contract. Pls.' Mem. in Supp. of Pls. Mot. for Class Certification, ECF No. 71-2 at 3 (sealed). On July 13, 2023, the Court heard oral argument concerning Plaintiff's Motion for Class Certification, Defendant's Response in Opposition, and any replies and exhibits thereto. The Court also heard brief argument on Plaintiff's Motion to Exclude under Rule 702 Portions of the Expert Reports of Lee. For the following reasons, Plaintiffs' Motion to Exclude is denied. And Plaintiffs' Motion to Certify Class is denied.

**I.    FACTUAL BACKGROUND**

  **a.  <u>Underlying Facts</u>**

In February of 2020, Bombin booked a flight from Maryland to Cuba through Southwest's mobile application. Am. Compl., ECF No. 14 ¶26; *see also* Behrens Decl., 85-15 at 3. That same month, Rood used Southwest's website (www.southwest.com) to purchase two Southwest tickets

for travel from California to Arizona.  Am. Compl., ECF No. 14 ¶31; *see also* Behrens Decl., 85-15 at 3.  By March, however, COVID-19 had been declared a global pandemic, and the United States started implementing travel restrictions.  ECF No. 14 ¶¶ 7–8.  Faced with the virus and declining consumer demand, Southwest changed its flight schedules.  *Id.* ¶¶13–15.  In particular, Southwest canceled Bombin's flight to Cuba, and rescheduled Rood's flight to Arizona three separate times.  *Id.* ¶¶ 28, 33–39.

Upon learning of the cancellation, Bombin called Southwest's customer service department to gain more information.  *Id.* ¶28.  He requested a refund, which Southwest denied.  *Id.* ¶29.  Instead, Southwest offered Bombin credit toward a future flight (called an "RTF").  *Id.* ¶¶29–30; *see also* Pls.' Resp. in Opp'n to Defs. Mot. to Exclude, ECF No. 133 at 5.  Rood was similarly offered an RTF travel credit in lieu of a refund.  ECF No. 14 ¶¶34, 37, 40 (sealed).

### b. <u>Contract at Issue: The Contract of Carriage ("COC"), T&Cs, class waiver provision</u>

Bombin and Rood allege that Southwest breached its Contract of Carriage ("COC") by refusing to offer refunds for their flights.[1]  Section 9 of the COC provides in relevant part:

a. Failure to Operate as Scheduled

> (1) Canceled Flights or Irregular Operations.  In the event Carrier cancels or fails to operate any flight according to Carrier's published schedule, or changes the schedule of any flight, Carrier will, at the request of a Passenger with a confirmed Ticket on such flight, take one of the following actions:

---

[1] *Id.* ¶19.  An airline's "[c]ontract of [c]arriage is a federally regulated contract that governs the rights of the parties." *Roman v. Spirit Airlines, Inc.*, 482 F. Supp. 3d 1304, 1309–10 (S.D. Fla. 2020), *aff'd*, No. 20-13699, 2021 WL 4317318 (11th Cir. Sept. 23, 2021) (quoting *Pons v. Arubaanse Luchtvaart Maatschappij*, No. 17-cv-22008, 2018 WL 2188477, at *3 (S.D. Fla. Mar. 29, 2018)).  Here, the Parties do not dispute the COC at issue is Southwest's COC effective January 29, 2020.  *See* ECF No. 14 at 26; *see also* ECF No. 85-3 at 2.

(i) Transport the Passenger at no additional charge on Carrier's next flight(s) on which space is available to the Passenger's intended destination, in accordance with Carrier's established reaccommodation practices; or

(ii) Refund the unused portion of the Passenger's fare in accordance with Section 4c.

Am. Compl. Ex. A, ECF No. 14 at 66.  Plaintiffs further aver, Southwest's Customer Service Commitment, a document which is incorporated by reference in the COC, provides that, in the event Southwest changes a flight schedule more than seven days before departure, customers "will have the option to select the revised itinerary, choose an alternate flight/date within a 14-day parameter of [their] original travel, or cancel [their] trip without penalty and receive a refund issued to the original form of payment." *Id.* at 73; *see also id.* at 11 ("Southwest's Contract of Carriage incorporates its Customer Service Commitment.").  Bombin and Rood assert that these provisions, taken together, afford customers the discretion to select a refund in the event of a scheduling change.  *Id.* ¶¶ 46–47.  In other words, Southwest cannot unilaterally decide to offer RTFs to customers following a scheduling change.

Southwest's COC also has a provision in the "Application of Conditions of Contract" Section of the "Introduction" that provides: "Transportation by Southwest Airlines Co. . . . is subject to the following terms and conditions, in addition to any terms and conditions printed on any Ticket, or specified on the Carrier's website."  Contract of Carriage §1(a)(1), ECF No. 85-3 at 5.  Southwest avers this provision incorporates additional terms into Southwest's COC, including the Website T&Cs found on Southwest's website.  *See* ECF No. 153 at 9.

Bombin and Rood both interacted with Southwest's COC and additional terms when purchasing tickets through Southwest's mobile and online purchasing platforms.  Bombin purchased the tickets at issue in the instant matter through Southwest's mobile application (or

"IOS") purchase flow.  *See e.g.*, ECF No. 143-2 at 24, Hursh Dep. Tr. 104:4-17; Behrens Decl., 85-15 at 2-3 (providing what information was accessible to customers, including Rood and Bombin, within Southwest's desktop and mobile application purchasing platforms during the proffered class period).  And Rood purchased tickets through the southwest.com website on desktop.  *See e.g.*, ECF No. 143-2 at 24, Hursh Dep. Tr. 104:18-22; Behrens Decl., 85-15 at 2-3.

Customers purchasing through either the southwest.com website or the Southwest mobile application purchase tickets by clicking the "purchase" button alongside hyperlinks of Southwests' Terms & Conditions ("T&Cs"), privacy policy, and the COC.  ECF No. 143-2 at 21, Hursh Dep. 95:2-10.  Southwest provided exhibits that reflect the conditions of the purchase agreements when Bombin and Rood made ticket purchases through Southwest's desktop website and mobile applications via IOS and Android.  Defs. Br. In Opp'n to Pls. Mot. to Strike, ECF No. 100-18 at 2 (providing information found on the purchase page of Southwest's iOS application); *id.* at 5 (providing displayed information found on the purchase page of the Southwest.com desktop); Defs. Notice. Regarding Certification Opp'n., ECF 143-2 at 81 (displaying a purchase page found though Southwest's iOS application); *id.* at 69 (displaying a purchase page found through Southwest's southwest.com).  In order to create a ticket through Southwest's webpage or mobile applications, consumers must click the purchase button to complete their transaction.  ECF No. 143-2 at 26, Hursh Dep. Tr. 108:6-14.

The purchase page on Southwest's Southwest.com desktop page provides the following information on top of a "Purchase" button: "By clicking 'Purchase', I agree to the Terms and Conditions below, the privacy police, fare rules, and the contract of carriage."  ECF 143-2 at 69 (applicable purchase page).  Immediately below the "Purchase" button, Southwest provides the Title: "Terms and Conditions" above the subtitle "Flight."  *Id.*  Then the first of several bullets

provided reads "I agree to the fare rules, Terms & Conditions, Privacy Policy, and Contract of Carriage." *Id.* The fare rules, T&Cs, Privacy Policy, and Contract of Carriage are shown in blue and are displayed as hyperlinks to pages containing the full terms found in each.  ECF No. 143-2, Hursh Dep. Tr., 79:3-15; 95:2-10.

Next, the purchase page on Southwest's iOS application provides the following information on top of a "Purchase" button: "By tapping 'Purchase', you accept the below conditions." ECF No. 143-2 at 81 (applicable purchase page).  Immediately below the "Purchase" button, Southwest provides a few sentences concerning hazardous materials banned from flights under federal laws. *Id.*  Right below the hazardous materials information—and on the same page— are blue phrases (i.e., "View more details," "Terms & Conditions," "Privacy Policy," and "Contract of Carriage") containing hyperlinks. *Id.*

Relevant to the instant motion, the "Terms and Conditions" page—that can be accessed via hyperlinks on Southwest's Purchase page—contains additional terms and conditions for passengers and "set forth a legally binding agreement between [customers] and Southwest."  ECF No. 147-9 at 2; *see also* ECF No. 85-15 at 1.  Southwest contends "[t]he use of Southwest's websites and applications are governed by [the] 'Terms & Conditions.'"  ECF No. 85-15 at 1. Specifically, the Terms & Conditions "govern [customers'] use of and access to www.southwest.com, www.swabiz.com, and any other websites, mobile, and other applications or services that post a link to these Terms . . . and the information features, content, and services, that [Southwest] own[s], control[s], or make[s] available through the Sites (. . . the 'Service') . . . ." ECF No. 85-15 at 1.  Under the "Forum Selection" provision on page three (3) of the Terms and

Conditions, the following language is provided:

**Forum Selection**

These Terms and the relationship between you and Southwest shall be governed by the laws of the State of Texas without regard to any conflict of law provisions. You agree to the personal and exclusive jurisdiction of the courts located within Dallas, TX. You hereby consent to the exclusive jurisdiction and venue of the State and Federal courts in Dallas, Texas in all disputes. You agree and understand that you will not bring against the Southwest Parties any class action lawsuit related to your access to, dealings with, or use of the Service.

*Id.* at 4.   Southwest contends the final sentence of the forum selection clause is a class action waiver provision, which bars Bombin and Rood from maintaining the present class action lawsuit because "Plaintiffs' claim 'relate[s] to' their use of the 'Service[s]' provided on the website and mobile application (i.e., ticket purchase)."[2]

    **c.**  **Motion Practice**

        ***i.***    ***Plaintiff's Motion for Class Certification, Defendant's Response in Opposition, and Subsequent Motion Practice***

On April 22, 2022, Plaintiffs moved for class certification.   ECF No. 71.   Plaintiffs contend they satisfy the Federal Rule of Civil Procedure 23 requirements for class certification, such as the Rule 23(a) requirements—numerosity, commonality, typicality, and adequacy—and the Rule 23(b) requirements—namely, "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. PRO. 23(b); *see also* FED. R. CIV. PRO, 23(a).

First, Plaintiffs contend, under Rule 23(b), "[c]ommon questions of law and fact predominate as to Plaintiffs' straightforward breach of contract claim." ECF No. 71-2 at 6 (citation

---

[2] ECF No. 85 at 14.   The first paragraph of Southwest's T&Cs provides its "Service[s]" include "the information, features, content, and services that [Southwest] own[s], control[s], or make[s] available through the Sites . . . ."   ECF No. 85-16; *see also* ECF No. 85-18 at 3.

omitted).  Plaintiffs further aver, "[t]h[e] common contract language [at issue] presents the same question for the entire Class: does the Contract require that Southwest give passengers the option of a monetary refund when Southwest initiates a Cancellation or Schedule Change?"[3]  So "[a]t the merits stage, Plaintiffs will present evidence to show that Southwest [breached the contract by] automatically issu[ing] or offer[ing] monetary refunds when Southwest Network Planning initiated flight Cancellations and Scheduling Changes."  ECF No. 71-2 at 5.

Plaintiffs identify several elements of their claims to show common questions of law and fact predominate.  For example, Plaintiffs aver: (1) a single contract "uniformly governs Southwest's obligations to putative Class Members when it fails to operate a flight on schedule[,]" *id.* at 8; (2) common evidence supports Plaintiffs' claim Southwest breached its contract with customers by uniformly providing customers RTFs, *id.* at 10; (3) Southwest underwent "a common source of conduct [concerning customer service practices]" supporting a finding of predominance, *id.* at 12; (4) "common evidence shows that Southwest's intentional and systematic practice was to offer an RTF instead of a refund to the original form of payment[,]" *id.* at 14-15; and (5) and Southwest's anticipated defenses involve a "class-wide question."  *Id.* at 16-17.

To further support its Rule 23(b) predominance claim, Plaintiffs submit "[t]he Class is ascertainable."  *Id.* at 15.  Plaintiffs contend the Class is ascertainable because it "is defined by

---

[3]  *Id.* at 5.  Plaintiffs provide definitions for "Schedule Change[s]" and "Cancellation[s]" in their Motion for Class Certification.  Plaintiffs define a "Schedule Change" as "a change of more than 15 minutes made by Southwest more than 10 days in advance of the originally scheduled flight (i.e. a Schedule Change made by Southwest's Network Planning).  ECF No. 71 at 1 n.3.  And Plaintiffs define a "Cancellation" as "a cancellation made by Southwest more than 10 days in advance of the originally scheduled flight date (i.e. Cancellations made by Southwest's Network Planning)."  *Id.* at 1 n. 2.  Plaintiffs utilize these definitions throughout their Motion for Class Certification, *see generally* ECF No. 71-2, and their Motion in Opposition of Defendant's Motion to Exclude Testimony of Dr. Bennett Under *Daubert*, ECF No. 133 at 5 n. 1.

objective criteria" and "Southwest's own detailed records, including its databases for flights and ticket information for such flights . . . can be used to identify the passengers."  ECF No. 71-2 at 18.  And further, Plaintiffs "measure of compensatory damages—a refund to the original form of payment and interest— . . . matches their theory of liability that Southwest owed Class Members refunds instead of the credits they provided . . . ."  *Id.* at 19.  Plaintiffs rely on their expert, Dr. Bennett, to aver "[t]he amount of refunds and interest Southwest owes each Class Member can be determined on a class-wide basis using Southwest's records."  *Id.* at 20 (citing Expert Report of Christopher J. Bennett, Ph.D., ECF No. 72 at 1-2, 21-23).

Lastly, Plaintiff contends their claims satisfy Rule 23(a)'s requirements because the class is sufficiently numerous, *id.* at 20; Plaintiffs "identified questions with common answers that would 'resolve an issue that is central to the validity of each one of the claims in one stroke,'" *id.* at 21 (quoting *Walmart v. Dukes*, 564 U.S. 338, 564 (2011)); typicality is satisfied because Plaintiffs' claims arise of the same course of conduct, rely on the same legal theories, and are governed by one contract, *id.* at 22-23.; the representative parties are adequate, *id.* at 23-24; and a class action is a superior method of adjudication due to class members' "relatively small value claims[,]" *id.* at 24.

Southwest opposes Plaintiff's Motion for Class Certification.  *See generally* ECF Nos. 85, 90 (filed under seal).  Southwest argues in its opposition to class certification that contractual interpretations are necessary at this stage in order to satisfy the rigorous analysis required by Rule 23. Def's. Mem. in Opp'n to Pls. Mot. for Class Certification, ECF No 85 at 7–8. Southwest states that the class action waiver bars Plaintiffs' class action suit because Plaintiffs fail the typicality requirement of Rule 23(a)(3), as they allege Plaintiffs are subject to defenses plainly inapplicable to many members of the class.  *Id*. at 25.  Southwest also contends Plaintiffs cannot adequately

represent the class because named Plaintiffs are bound by the class action waiver, therefore failing to satisfy the adequacy requirement of Federal Rule 23(a)(4) of Civil Procedure. *Id*. at 12-13. More specifically, Southwest alleges "[c]ustomers, like [named] Plaintiffs, who purchased fares on Southwest's website or mobile application agreed to Southwest's Terms & Conditions ('Terms'), and specifically to 'not bring against [Southwest] any class action lawsuit related to [their] access to, dealings with, or use of the Service." *Id.* at 14 (citing Behrens Decl., ECF No. 85-15).

Following Southwest's Memorandum in Opposition, Plaintiffs moved to strike multiple exhibits presented by Southwest, arguing the materials should be stricken because Southwest failed to properly disclose the subject matter contained in those filings, and is unable to show that such failure was harmless or substantially justified. *See generally* Pls. Mot. To Strike, ECF No. 95. The Court found that striking Southwest's use of the Behrens Declaration, Call Transcripts, and Passenger Data was not warranted given the ability of the Parties to cure any prejudice to Plaintiffs, the minimal disruption to the matter's pre-trial and trial proceedings, and the importance of the evidence to Southwest.[4] Accordingly, the Court denied Plaintiff's motion to strike. *See* ECF Nos. 125 (Mem. Op.), 126 (Order). The Court then reopened limited discovery on the issue of class action waiver. *See e.g.*, ECF No. 132 (providing a modified Scheduling Order following supplemental discovery and briefing relating to Plaintiffs' motion seeking class certification).

On April 17, 2023, following the Court's limited re-opening of discovery, Plaintiffs filed a reply in support of their motion to certify the class. *See generally* Pls. Reply to Resp. in Opp'n., ECF No. 145. Concerning the class waiver issue, Plaintiffs submit the following averments, inter alia, opposing the Court's application of the class waiver at this time: (1) the T&Cs are not included

---

[4] *See generally* Mem. Op., ECF No. 125.

and thus inapplicable to the COC, *id.* at 18; (2) Plaintiffs did not have sufficient notice of the class waiver provision in the T&Cs pursuant to 14 C.F.R. § 253.4 and 14 C.F.R. § 253.5, *id.*; (3) unlike the COC, which is a contract of adhesion that governs Southwest's transportation of passengers, the Website T&Cs is a contract of adhesion that merely governs use of and access to Southwest's websites and mobile applications, *id.* at 17; (4) the forum-selection clause—and thus the class action waiver provision within the forum-selection clause— in the T&Cs is unenforceable because it conflicts with federal law, *id.* at 25; and lastly, (5) even if assuming the T&Cs applied to Plaintiff's breach of the COC, Southwest's provision of the T&Cs to passengers (hyperlinked to another page) was insufficient to constitute reasonably conspicuous notice the Plaintiffs assented to the T&Cs, *id.* at 25-26.

Southwest then filed a sur-reply in opposition to Plaintiff's motion for class certification. *See generally* Defs. Sur-Reply in Opp'n. to Pls. Mot. For Class Certification, ECF No. 153.   In relevant part, Southwest's Sur-Reply in Opposition contains several arguments in favor of enforcing the class action waiver. ECF No. 153 at 8.   First, Southwest avers the waiver argument concerns the adequacy of the two named Plaintiffs.   *Id.*   Second, it contends the source of the waiver is the T&Cs, and the fact that Southwest recently added a class-action waiver to a different contract (i.e., the COC) is a red herring because the only issue here is whether the waiver in the T&Cs encompass Plaintiffs' claims. *Id.* Third, Southwest submits the COC's integration clause does not negate enforcement of the T&Cs because the COC incorporates terms and conditions specified on Southwest's website.  COC § 1a(1) [Dkt. No. 85-3] ("Transportation . . . is subject to the following terms and conditions, in addition to any terms and conditions . . . specified on the Carrier's website.").   *Id.*   In sum, Southwest avers named Plaintiffs do not satisfy requirements under Federal Rule 23 of Civil Procedure and thus class certification is not warranted.

> ### ii.   *Plaintiff's Motion to Exclude under Rule 702 Portions of the Expert Report of Darin N. Lee, PhD*

Plaintiff also moves to exclude portions of Southwest's expert (collectively, the "Lee Reports") in support of its Response in Opposition to Class Certification.[5]   In sum, Plaintiffs contend they seek to exclude selected portions of the Lee Reports because the selected portions are irrelevant to the Court in determining the class certification issue.   ECF No. 146-1 at 4. Plaintiffs aver "[n]one of the portions of the Lee Reports . . . are relevant to the question of whether Plaintiffs' theory of class-wide breach will generate common questions that will be answerable on a class-wide basis."   *Id.*

Southwest opposes Plaintiffs' motion to exclude.   *See generally* ECF No. 154.   Southwest submits the Lee Reports provide information concerning the COVID-19 pandemic's disruption of the airline industry, and thus Southwest's response to COVID-19, including Southwest's provisions of RTFs.   *Id.* at 7.   So, in sum, Southwest avers Dr. Lee's ". . . opinions thus ultimately relate not to the element of breach, but to elements of causation, injury, and damages, as well as [Southwest's] defenses, such as mitigation."   *Id.*

## II.   LEGAL STANDARDS

### a.   <u>Motions to Exclude under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)</u>

Under the Federal Rules of Evidence, district courts must act as the gatekeepers of expert

---

[5] *See generally* ECF No. 146.   Specifically, Plaintiffs move to exclude Paragraphs 7(a)-(c), 7(e)-(j), 7(l)-(m), 9-17, 19-32, 36-57, 63 of the Expert Report of Darrin N. Lee, Ph.D, with respect to class certification (ECF No. 86); and Paragraphs 1-4, and 6 of the Supplemental Expert Report of Darin N. Lee, PhD. with respect to class certification.   *Id.* at 1, 5.

testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); FED. R. EVID. 702.  Before testimony can reach the jury under the cloak of expertise, the Court must evaluate it for three criteria: qualification, reliability and fit. *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832 (3d Cir. 2020).

A witness is *qualified* to provide expert testimony only if the witness has "specialized expertise" in the testimony's subject matter.  *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).   A witness's testimony is *reliable* only if it is founded upon "good grounds."  *UGI Sunbury LLC*, 949 F.3d at 834; FED. R. EVID. 702 (requiring expert testimony be "based on sufficient facts or data" and be derived from "reliable principles and methods" that have been "reliably applied . . . to the facts of the case.").  The U.S. Court of Appeals for "[t]he Third Circuit has interpreted 'reliability' to mean that an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." *Elgert v. Siemens Indus., Inc.*, No. CV 17-1985, 2019 WL 1294819, at *5 (E.D. Pa. Mar. 20, 2019) (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) (internal citations omitted)).

And lastly, a witness' testimony *fits* a case only if it would help the trier of fact to understand the evidence or determine a fact in issue.  *UGI Sunbury*, 949 F.3d at 835 (quoting FED. R. EVID. 702); *see also United States v. Ford*, 481 F.3d 215, 219 n.6 (3d Cir. 2007) ("[F]it is [primarily] a relevance concern.") (internal quotation marks omitted).   "The [relevance] requirement should be evaluated under the standard expressed in [Federal Rule of Evidence] 401." *Ford*, 481 F.3d 215 at 218.  (citing *United States v. Prince-Oyibo*, 320 F.3d 494, 504 (4th Cir.2003) ("What Rule 702 does require ... is that the district court make initial determinations . . . that the proffered evidence is relevant in the sense that it will assist the trier of fact to understand the

evidence or to determine a fact in issue."); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir.2002) ("In fulfilling this gatekeeping role, the trial court should look to the standards of Rule 401 in analyzing whether proffered expert testimony is relevant....")).

The Rules of Evidence reflect a liberal policy of admissibility, even for expert testimony. *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008). But expert testimony must satisfy the requirements set out above to be admissible. *UGI Sunbury*, 949 F.3d at 832–33. The burden to establish that each requirement is satisfied by a preponderance of the evidence rests with the party offering the expert testimony. *See Padillas v. Stork–Gamco, Inc.,* 186 F.3d 412, 418 (3d Cir.1999).

### b. <u>Motions for Class Certification</u>

To certify a class, Rule 23 requires a two-pronged analysis. FED. R. CIV. P. 23. First, Federal Rule of Civil Procedure 23(a) provides Plaintiffs must meet four elements for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. FED. R. CIV. P. 23(a). "If the requirements of Rule 23(a) are met, Plaintiffs must satisfy additional requirements of predominance and superiority required by Rule 23(b)(3)." *Korea Wk., Inc. v. Got Cap., LLC*, No. CV 15-6351, 2016 WL 3049490, at *6 (E.D. Pa. May 27, 2016) (Kearney, J.) (internal footnote omitted).

The U.S. Court of Appeals for the Third Circuit has outlined the standard of review for district courts at the class certification stage. The Court of Appeals has found:

> First, the decision to certify a class calls for findings by the court, not merely a "threshold showing" by a party, that each requirement of Rule 23 is met. Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence. Second, the court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits--including disputes touching on elements of the cause of action. Third, the court's obligation to consider all

> relevant evidence and arguments extends to expert testimony, whether offered by a
> party seeking class certification or by a party opposing it.

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008).  Thus "trial courts 'must

engage in a **rigorous analysis** and find each of Rule 23's requirements met by a preponderance of

the evidence before granting certification. They must do so even if it involves judging credibility,

weighing evidence, or deciding issues that overlap with the merits of a plaintiff's claims." *In re*

*Niaspan Antitrust Litig.*, 67 F.4th 118 (3d Cir. 2023) (emphasis added) (quoting *Harnish v.*

*Widener Univ. Sch. of Law*, 833 F.3d 298, 304 (3d Cir. 2016)).  And, in *In re Niaspan Antitrust*

*Litigation*, the U.S. Court of Appeals further found that class certification should be denied if a

district court harbors uncertainty about whether the plaintiff has satisfied the requirements of Rule

23.  *Id.* at 130 (quoting *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 483 (3d Cir. 2018)).

## III.    DISCUSSION

### a.    <u>Plaintiff's Motion to Exclude Portions of Dr. Lee's Expert Reports</u>

Plaintiffs first move to exclude various portions of Defendant's expert, Dr. Lee's expert

reports because, Plaintiffs aver, the Lee Reports are irrelevant to Plaintiff's class certification

motion.  *See generally* ECF No. 146.

First, Plaintiffs seek to exclude the entirety of Section III.A of Dr. Lee's Report, entitled

"Southwest Has Always Offered Consumers the Most Flexible Ticketing Options of Any Major

U.S. Carrier." *Id.* at 5-6.  In relevant part, Plaintiffs contend Dr. Lee's opinion Southwest has a

reputation of excellent customer service and "consumer-friendly practices" is irrelevant because

its reputation does not bear on the questions of breach or damages calculations.  *Id.* at 6.  On the

other hand, Southwest submits these opinions are relevant to its mitigation defense because "(a)

Southwest does, in fact, have consumer-friendly policies where refunds are readily available on

14

request, (b) many passengers book with Southwest because of those policies and so are familiar with Southwest's travel credit and refund policies, and (c) many passengers thus had knowledge of these policies and would be subject to Southwest's mitigation defense." ECF No. 154 at 10-11. The Court agrees. Dr. Lee's opinion concerning Southwest's customer service and refund policies are broadly related to Southwest's mitigation and other defenses. Accordingly, preclusion of Section III.A of Dr. Lee's Report is not warranted.

Next, Plaintiffs seek to exclude nearly all of Section III.B of the Lee Report, entitled "The COVID-19 Pandemic Severely Affected Southwest's Operations and Led to Enhanced RTF Policies to Provide Even More Flexibility to Its Customers." ECF No. 146 at 6-7. In sum, this section concerned COVID's impact on the airline industry and Southwest's corresponding responses concerning flight schedules and customer policies. ECF No. 154 at 11-12. The Court agrees with Southwest that Dr. Lee's opinions are relevant background information concerning Southwest's refund policies during the relevant time period for Plaintiffs' proffered class. More specifically, Dr. Lee's opinions concern Southwest's defenses such as mitigation, superiority of a class action under 23(a), and other defenses raised by Southwest such as force majeure. *Id.* at 12-13.

Third, Plaintiffs seek to exclude portions of several sections of Dr. Lee's reports concerning the value of RTFs and consumer preference. In short, Dr. Lee opines that (a) RTFs have value (which value will vary by class members), (b) that "many proposed class members who had flights canceled or changed (as defined by Plaintiffs) would have selected an RTF," and (c) at least five specific factual circumstances exist, including with regard to tickets held by non-purchasing passengers, "that provide economic incentives to proactively choose an RTF instead of a refund, or would at least cause a consumer to be indifferent between an RTF and cash refund." ECF No.

15

154 at 13-14 (citing Lee Report ¶¶ 26–27). The Court agrees Dr. Lee's opinions concerning the value of RTFs to Southwest's customers are relevant to whether Plaintiffs adequately present common injuries here, as well as to the issue of damages.   Moreover, customers' varying preferences concerning RTFs are relevant to Southwest's defense of individualized inquiries.

Fourth, Plaintiffs' contention preclusion of Dr. Lee's Section IV.B entitled "Data Demonstrates That Consumers Do Not Uniformly Choose Refunds Over RTFs" is warranted is similarly unpersuasive.   Section IV.B provides information broadly concerning consumer preference of RTFs (in lieu of a refund).   Like the previous section, this section of the Lee Report is relevant to the issues of injury, damages, and individualized inquiries.

And lastly, in their fifth argument, Plaintiffs seek to exclude Section V of Dr. Lee's Report, entitled "Dr. Bennett's Damages Model Rests on an Implicit and Incorrect Predicate Assumption That Each Proposed Class Member Would Have Flown Had Their Flight Operated as Originally Scheduled." [6]  As previously stated, the impacts of COVID-19, and responses to the pandemic by Southwests, as well as considerations by passengers are broadly relevant to issues of injury and individualized inquiries.   Dr. Lee's opinions in this section address opinions by Plaintiffs' expert that all class members "would have flown had their flight not been canceled or changed and have thus uniformly suffered economic injury as a result of Southwest's actions."  ECF No. 154 at 19 (citing Lee Report ¶ 36).   Dr. Lee opines that a variety of factors—e.g., reluctance to travel, business closures, government-imposed restrictions, and quarantine requirements—caused many passengers to voluntarily cancel their flights or simply not show up at all (i.e., "no show").  *Id.* (citing Lee Report ¶ 36).   Thus Southwest submits passengers have varying, individualized

---

[6] Plaintiffs also seek to exclude paragraph sixty-three (63) of the Lee Report concerning a customer's preference for an RTF.

injuries.  And Dr. Lee's opinions regarding the myriad reasons that passengers did not ultimately travel thus supports Southwest's position on causation and injury (i.e., that it is inappropriate simply to assume that a customer holding an RTF has necessarily suffered a breach, or an injury caused by the breach, or any injury at all), and the predominance defeating individual inquiries raised by those issues.  ECF No. 154 at 21.  The Court agrees this section of Dr. Lee's expert reports is relevant to Southwest's defenses and opposition to Plaintiff's class certification motion.

Therefore, in sum, the Court finds Dr. Lee's various opinions relevant to issues faced at the class certification stage.  Under liberal standards of admissibility and a relevancy requirement as expressed in Federal Rule of Evidence 401, preclusion of the various portions of Dr. Lee's expert report is not warranted.  See e.g., *Ford*, 481 F.3d 215 at 218 (citing *United States v. Prince-Oyibo*, 320 F.3d 494, 504 (4th Cir.2003)); *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) ("The Rules of Evidence reflect a liberal policy of admissibility, even for expert testimony.").  Accordingly, Plaintiff's Motion to Exclude under Rule 702 Portions of the Expert Reports of Lee (ECF No. 146) is denied.

### b. **Plaintiffs' Motion for Class Certification**

Plaintiffs aver class certification is warranted because Plaintiffs satisfy the Federal Rule of Civil Procedure 23 requirements for class certification.  *See generally* ECF No. 71.  Southwest opposes certification of the class, averring, inter alia, Plaintiffs' assent to a class action waiver prevents them from satisfying the adequacy requirement under Federal Rule of Civil Procedure 23(a).  ECF No. 85 at 3; *see also* ECF No. 153 at 9-10.  Here, the Parties point to a class action waiver located in a forum selection provision of Southwest's website T&Cs.[7]  In relevant part, the

---

[7] ECF No. 147-9 at 4.  For further discussion of Southwest's T&Cs and the wording of the class waiver provision, *see supra* pgs. 2-6.

class action waiver provides: "You agree and understand that you will not bring against the Southwest Parties any class action lawsuit related to your access to, dealings with, or use of the Service."[8]   Here, Plaintiffs contend the class action waiver is unenforceable under federal regulations prohibiting forum selection clauses.  ECF No. 145 at 24-26.  And, even if the class action waiver is *not* barred, Plaintiffs aver Southwest failed to provide sufficient notice to Plaintiffs under additional federal regulations.  The Court considers Plaintiffs' averments in seriatim.

Federal district courts in the Eastern District of Pennsylvania have found class representatives who agree to a class action waiver are inadequate under Federal Rule 23.  *See e.g., Korea Wk.,* 2016 WL 3049490, at *11.  In *Korea Week, Inc. v. Got Capital LLC*, plaintiffs signed commercial financing contracts containing class action waivers.[9]  At the class certification hearing, plaintiffs introduced several contracts at issue—all but one contained a class action waiver.  *Korea Wk.,* 2016 WL 3049490, at *3-4.  "Plaintiffs admit[ted] they signed financing contracts with class action waivers but assert[ed] the waivers were unconscionable."  *Id.* at *6.  At a class certification hearing, the district court, "evaluated the credibility of the only two proffered named plaintiffs and admitted exhibits including deposition testimony of some, but not all, named merchant plaintiffs."  *Id*. at *1.  Plaintiffs "d[id] not argue they could serve as adequate class representatives if [the district court] f[ou]nd the class action waiver . . . enforceable."  *Id.* at *11.  Instead, plaintiffs averred "the class action waivers [were] void and unconscionable and ask[ed] [the court] to

---

[8] *Id.* at 4.  The class action waiver is located in Southwest's provision titled "Forum Selection." *Id.*  The class action waiver is the fourth and final sentence following three sentences concerning: choice of law, personal and exclusive jurisdiction, and forum selection, respectively.  *Id.*  For further discussion of Southwest's T&Cs and the wording of the class waiver provision, *see supra* pgs. 2-6.

[9] *Id* at *6.  Plaintiffs did not dispute they signed contract with class action waivers.  *See id.* Nevertheless, Plaintiffs averred the class action waiver was unconscionable and thus void.  *See id.*

consider them as 'consumers' rather than 'merchants.'"  *Id.* at *4. The court ultimately found the class action waivers were not unconscionable.  *Id.* at *8-10.  Accordingly, the district court then found the plaintiffs could not adequately represent absent class members.  *Id.* at *11 ("The Plaintiffs agreed to pursue claims on their own behalf and cannot now change their minds and transform into fiduciaries for others.").  The district court denied class certification because plaintiffs did not satisfy the adequacy requirement of Federal Rule 23 of Civil Procedure due to their assent to enforceable class action waiver provisions.[10]

Therefore, similar to the district court's analysis in *Korea Week*, the Court must consider whether Plaintiffs assented to an enforceable class waiver provision and thus are inadequate under Federal Rule 23 of Civil Procedure.[11]

### i.    *Applicability of the Class Action Waiver to Named Plaintiffs and the Current Action*

Here, the Parties dispute whether the class action waiver at issue is enforceable.  First, Plaintiffs argue that the Southwests' Website Terms & Conditions ("T&Cs") are not included in the COC, and so Southwest improperly attempts to insert a provision of the T&Cs into the COC at issue.  *Id.* at 18.  The Court is not persuaded.  As Southwest correctly points out, the COC at

---

[10] *See Korea Week*, 2016 WL 3049490 at *11.  In *Korea Week*, the federal district court provided reasoning as to why "named Plaintiffs [who have] contractually waived their right to bring, or participate in, a class action . . . cannot adequately represent [a] proposed [c]lass.  *Id.* at *10 (finding, inter alia, "Class representatives must vigorously pursue the interests of class member, and inability or failure to do so renders the class representative inadequate.") (footnote omitted).

[11] *See In re Niaspan Antitrust Litig.*, 67 F.4th 118 (3d Cir. 2023) (finding "trial courts 'must engage in a **rigorous analysis** and find each of Rule 23's requirements met by a preponderance of the evidence before granting certification. They must do so even if it involves judging credibility, weighing evidence, or deciding issues that overlap with the merits of a plaintiff's claims." (emphasis added) (internal quotation omitted)).

issue in this case "incorporates terms and conditions specified on Southwest's website."  ECF No. 153 at 6 (citing Contract of Carriage Section 1(a)(1), ECF No. 85-3 at 5 (providing, in the "Application of Conditions of Contract" Section of the "Introduction," "Transportation by Southwest Airlines Co. . . . is subject to the following terms and conditions, in addition to any terms and conditions printed on any Ticket, or specified on the Carrier's website); *see also* COC Section 1(a)(1), ECF No. 1 at 19 (same).  Through Southwest's southwest.com desktop website or the Southwest mobile application, customers are provided additional terms in the form of hyperlinks to Southwests' T&Cs, privacy policy, and the COC.  ECF No. 143-2, Hursh Dep. Tr., 79:3-15; 95:2-10.  The T&Cs contain the class action waiver provision at issue.  85-15 at 4 (providing "You agree and understand that you will not bring against the Southwest Parties any class action lawsuit related to your access to, dealings with, or use of the Service.").

Plaintiffs' then contend class action waiver is not enforceable because it is contained in the T&Cs, **not** the COC at issue.  But, as stated, the COC "incorporates terms and conditions specified on Southwest's website[,]" which includes the T&Cs presented to customers going through the ticket purchasing process either on desktop or mobile application.  ECF No. 153 at 6 (citing Contract of Carriage Section 1(a)(1), ECF No. 85-3).  And Plaintiffs' contention Southwest failed to invoke the class action waiver by not including waiver language in the COC is unavailing; the COC explicitly refers to—and acknowledges the enforceability of—additional terms and conditions found on Southwest's website and tickets.[12]

---

[12] See Contract of Carriage Section 1(a)(1), ECF No. 85-3.  And, relatedly, Southwest's incorporation of the T&Cs is not prevented by any conflict between the terms—the COC is silent concerning a class-action waiver and explicitly incorporates additional terms.  And moreover, as Southwest submits, the COC's incorporation of the T&Cs prevents the COC's integration clause nullifying the T&Cs.  ECF No. 153 at 9 (internal citations omitted); see also See Contract of

Moreover, Bombin and Rood both engaged with Southwest's COC and additional online terms when purchasing tickets through Southwest's desktop website and mobile application purchasing platforms. Southwest provides evidence that by purchasing tickets through Southwest's desktop website and mobile application, Bombin and Rood agreed to Southwest's COC and T&Cs, among other terms. *See e.g.*, Defs. Br. In Opp'n to Pls. Mot. to Strike, ECF No. 100-18 at 2 (providing information found on the purchase page of Southwest's iOS application); *id.* at 5 (providing displayed information found on the purchase page of the Southwest.com desktop); Defs. Notice Regarding Certification Opp'n., ECF 143-2 at 81 (displaying a purchase page found though Southwest's iOS application); *id.* at 69 (displaying a purchase page found through Southwest's southwest.com; ECF No. 143-2 at 26, Hursh Dep. Tr. 108:6-14 (providing consumers must click the purchase button to complete their transaction in order to create a ticket through Southwest's desktop webpage or mobile applications). And the full text of the COC and T&Cs were available to Bombin and Rood via hyperlink on the same purchase page. *See e.g.*, Behrens Decl., 85-15 at 2-3 (providing what information was accessible to customers, including Rood and Bombin, within Southwest's desktop and mobile application purchasing platforms during the proffered class period).

Because the Court finds the T&Cs at issue apply to the present issue of Plaintiffs' adequacy under Rule 23(a), the Court will now consider Plaintiffs' averments that enforcement of the class action waiver in the T&Cs is barred by relevant federal regulations.

---

Carriage Section 10(c), ECF No. 85-3 at 46 ("This Contract of Carriage represents the entire, integrated agreement between the parties relating to transportation by Carrier . . . .").

ii.   *Enforceability of the Class Action Waiver Under Section 253.10*

Plaintiffs aver the class action waiver is barred by 14 C.F.R. § 253.10.  ECF No. 145 at 25. On the other hand, Southwest contends Section 253.10 does not bar the present class action waiver because it "only prohibits forum-selection clauses."  ECF No. 153 at 10 (internal citation omitted). The Court agrees Section 253.10 does not bar the present class action waiver.

"Federal law, not state law, governs many aspects of interstate air transportation." *Schoene v. Spirit Airlines, Inc.*, No. 3:22-CV-1568-SI, 2023 WL 3495832, at *4 (D. Or. May 17, 2023). "The Airline Deregulation Act of 1978 (Airline Deregulation Act) preempts state law regarding pricing, routes, and services of carriers that provide interstate air transportation." *Id.* (citing 49 U.S.C. § 41713(b)(1)).  And "[t]he United States Department of Transportation (DOT) is charged with promulgating comprehensive regulations interpreting the Airline Deregulation Act."  *Id.* (citing 49 U.S.C. § 40113).   Therefore, "[a]n airline's '[c]ontract of [c]arriage is a federally regulated contract that governs the rights of the parties.'"[13]

Here, Plaintiffs first contend Section 253.10 bars enforcement of Southwest's class action waiver incorporated by reference into its contract of carriage.  Section 253.10 provides:

> No carrier may impose any contract of carriage provision containing a **choice-of-forum clause that attempts to preclude a passenger**, or a person who purchases a ticket for air transportation on behalf of a passenger, **from bringing a claim against a carrier in any**

---

[13] *Román v. Spirit Airlines, Inc.*, 482 F. Supp. 3d 1304, 1309–10 (S.D. Fla. 2020), *aff'd*, No. 20-13699, 2021 WL 4317318 (11th Cir. Sept. 23, 2021) (quoting *Pons v. Arubaanse Luchtvaart Maatschappij*, No. 17-cv-22008, 2018 WL 2188477, at *3 (S.D. Fla. Mar. 29, 2018)).  Moreover, regulations contained in the Code of Federal Regulations are legally binding, and are described in United States Code as, "complete codifications of the documents of each agency of the Government having general applicability and legal effect." 44 U.S.C.S. § 1510 (LexisNexis, Lexis Advance through Public Law 118-6, approved June 14, 2023).

**court of competent jurisdiction**, including a court within the jurisdiction of that passenger's residence in the United States.

14 C.F.R. § 253.10 (emphasis added). Notes surrounding the adoption of Section 253.10 provide the DOT's goals behind the regulation. *See* Enhancing Airline Passenger Protections, 76 Fed. Reg. 23110-01 (April 25, 2011). DOT sought to "specifically permit consumers to file suit where they live provided that the carrier does business within that jurisdiction."[14] Therefore, the DOT adopted Section 253.10 among concerns airlines would limit *where* customers bring lawsuits. *See generally* Enhancing Airline Passenger Protections, 76 Fed. Reg. 23110-01 (April 25, 2011).

Few federal courts have considered whether Section 253.10 bars provisions other than forum selection clauses. For example, only a handful of federal courts have found Section 253.10 prohibits <u>arbitration</u> provisions as well as forum selection clauses. *See e.g.*, *Rudolph v. United Airlines Holdings, Inc.*, 519 F. Supp. 3d 438, 447 (N.D. Ill. 2021) (preventing United Airlines from enforcing an arbitration agreement in its contract of carriage under Section 253.10); *Bugarin v. All Nippon Airways Co.*, No. 20-CV-03341-BLF, 2021 WL 4974978, at *4 (N.D. Cal. Oct. 26, 2021) (finding "[w]hile [Section] 253.10 prohibits a carrier from including in its COC a 'choice-of-forum clause' that would preclude suit against the carrier 'in any court of competent jurisdiction,' an

---

[14] *Id.* Moreover, the DOT adopted the rule as proposed, noting that the rule:

> [P]rohibit[s] a U.S. carrier from including language in its contract of carriage precluding a passenger from bringing a consumer-related claim involving a domestic flight against the carrier in any court of competent jurisdiction. The Department feels that if a carrier reaches out to do business in a particular jurisdiction, i.e., reaches out to solicit business within that jurisdiction, and sells tickets in a jurisdiction, then it is fair and reasonable to expect that the carrier can defend itself against litigation brought by a consumer who resides in that jurisdiction.

*Id.*

arbitration provision appears to fall within this prohibition, as it would preclude suit against the carrier in any court." (citing 14 C.F.R. § 253.10)).

Here, Southwest seeks to enforce a class action waiver located in a subsection of its T&Cs titled "Forum Selection." The Parties' briefs—and the Court's own research—has not identified a federal court that has interpreted Section 253.10 to bar a class action waiver provision. Plaintiffs' Reply in Support of their Motion to Certify the Class provides citations to case law interpreting Section 253.10 to prohibit <u>arbitration</u> clauses, **not** class waivers. *See* ECF No. 145 at 25 (citing *Sholopa v. Turk Hava Yollari A.O., Inc.*, 595 F. Supp. 3d 257, 264 n. 2 (S.D.N.Y. 2022); *Bugarin v. All Nippon Airways Co.*, No. 20-CV-03341-BLF, 2021 WL 4974978, at *6 (N.D. Cal. Oct. 26, 2021)). Plaintiffs submit that the class waiver language should be barred because it is found within the forum selection clause. *Id.* The Court is not persuaded. The Court looks to the substance of the provision Southwest seeks to enforce. Southwest does not attempt to enforce any provision relating to forum selection—instead seeking to enforce the class action waiver language. *See* ECF No. 90 at 14 ("Plaintiffs are inadequate because they are subject to a class-action waiver."). The Court will not prevent Southwest from enforcing a class action waiver agreed to by Plaintiffs merely because it is found in a subsection titled "forum selection."

Furthermore, the only federal court to consider whether Section 253.10 bars a class action waiver answered in the negative. *See Román v. Spirit Airlines, Inc.*, 482 F. Supp. 3d 1304, 1315 (S.D. Fla. 2020) (finding a class action waiver enforceable under Section 253.10 and thus dismissing plaintiffs' class claims of breach of contract). In *Román v. Spirit Airlines*, Plaintiffs sued Spirit Airlines for breach of Spirit's Contract of Carriage. 482 F. Supp. 3d at 1307. In their complaint, plaintiffs acknowledged a class action waiver provision located of Spirit's COC. *Id.* at 1315. At the motion to dismiss stage, the federal district court considered whether federal

regulations barred the enforceability of a class action provision in Spirit's COC. *Id.* at 1315-16. The court found, "[A]lthough the [Federal Aviation Regulations] expressly prohibit 'any contract of carriage provision containing a choice-of-forum clause[,]'. . . **they are silent regarding class action waiver provisions in the airlines' contracts of carriage**." *Id.* at 1315 (internal citations omitted). The court also found the class action waiver enforceable due to "[p]laintiff's awareness of the class action waiver provision and the incorporation of the COC into their ticket purchases" *Id.* (internal footnote omitted). Accordingly, the court dismissed plaintiff's class action claims. *Id.* (internal footnote omitted).

The Court finds the district court's narrow interpretation of Section 253.10 in *Román* persuasive. *See generally* 482 F. Supp. 3d 1304. Section 253.10 explicitly applies to—and prohibits—forum-selection clauses and is silent concerning class waiver provisions. 14 C.F.R. § 253.10. Moreover, notes concerning Section 253.10 provide the DOT's goal to prevent against inconvenient forums and "specifically permit consumers to file suit where they live provided that the carrier does business within that jurisdiction." Enhancing Airline Passenger Protections, 76 Fed. Reg. 23110-01. Thus the purpose and language of Section 253.10 concern the location of consumers' lawsuits, not the substance or manner of the claims brought. Therefore, the Court declines to interpret Section 253.10 as prohibiting Southwest's class action waiver in its T&Cs.

### iii.   *Notice of Southwest's Online T&Cs Under Sections 253.4 & 253.5*

Lastly, Plaintiffs aver the terms of Southwest's online T&Cs are not sufficiently conspicuous under federal regulations. ECF No. 145 at 24 (citing 14 C.F.R. §§ 253.4, 253.5) (additional internal citations omitted). Here, Southwest's desktop website and mobile application provided Plaintiffs Bombin and Rood with hyperlinks to Southwest's T&Cs upon purchasing tickets. *See e.g.*, Behrens Decl., 85-15 at 2-3 (providing what information was accessible to

customers, including Rood and Bombin, within Southwest's desktop and mobile application purchasing platforms during the proffered class period); ECF No. 143-2 at 7-9 (testifying to the information provided by Southwest to customers, including Rood and Bombin, throughout the "purchase flow" process of purchasing tickets in February 2020);   ECF 143-2 at 69 (screenshot of a purchase page on Southwest's desktop during the relevant time period); ECF No. 143-2 at 81 (screenshot of purchase page on Southwest's iOS application during the relevant time period). Southwest contends the terms included in the T&Cs are incorporated by reference into its COC. *See* ECF No. 153 at 9 (citing COC Section 1(a)(1), ECF No. 85-3) ("Transportation . . . is subject to the following terms and conditions, in addition to any terms and conditions . . . specified in the Carrier's website.").  Southwest also submits Plaintiffs Bombin and Rood assented to the T&Cs upon purchasing their ticket through Southwest's desktop and/or mobile application.[15]

Plaintiffs submit Southwest did not provide customers with sufficient notice of these additional contract terms and thus the terms—including the class action waiver—cannot be enforceable under relevant federal regulations.  On the other hand, Southwest submits "the notice of assent to the Terms & Conditions on the online purchase page was reasonable, conspicuous, and sufficient."  ECF No. 153 at 10.

"DOT regulations provide that an airline carrier may incorporate by reference in a ticket 'any term of the contract for providing interstate air transportation,' if proper notice is provided." *Covino v. Spirit Airlines, Inc.*, 406 F. Supp. 3d 147, 152 (D. Mass. 2019) (citing 14 C.F.R. §§

---

[15] For further discussion of Bombin and Rood's interaction with and assent to the T&Cs at issue, *see supra* pgs. 2-6.

253.4(a), 253.5(a)).   Section 253.4[16] and Section 253.5[17] govern whether passengers have sufficient notice of contract of carriage terms incorporated by reference.  *See* 14 C.F.R. §§ 253.4, 253.5. "The [notice] regulations prescribe the form of the 'conspicuous notice' for incorporated terms: the notice must state that any terms incorporated by reference are part of the contract, that passengers may inspect the full text of each term at the carrier's airport or city ticket office, that passengers may receive the full text of terms by mail or other delivery service, and that passengers may obtain more information about the terms from any location where the carrier's tickets are sold." *Schoene*, No. 3:22-CV-1568-SI, 2023 WL 3495832, at *5 (D. Or. May 17, 2023) (citing 14 C.F.R. §§ 253.4(b)-(c), 253.5)). Thus, "[i]n sum, airlines must give proper notice that incorporated terms exist and instruct passengers where and how they can view those terms." *Id.* (citing 14 C.F.R. §§ 253.4(b)-(c), 253.5).

To determine whether an airline has provided sufficient notice under Sections 253.4 and 253.5, federal courts have considered whether the incorporation by reference of important legal

---

[16] Section 253.4 provides:

> (b) Each air carrier shall make the full text of each term that it incorporates by reference in a contract of carriage available for public inspection at each of its airport and city ticket offices.
> (c) Each air carrier shall provide free of charge by mail or other delivery service to passengers, upon their request, a copy of the full text of its terms incorporated by reference in the contract. Each carrier shall keep available at all times, free of charge, at all locations where its tickets are sold within the United States information sufficient to enable passengers to order the full text of such terms.

[17] Section 245.5 provides:

> [E]ach air carrier shall include on or with a ticket, or other written instrument given to a passenger, that embodies the contract of carriage and incorporates terms by reference in that contract, a conspicuous notice that:
> (a) Any terms incorporated by reference are part of the contract . . . .

rights was "reasonably communicate[d]" to the passenger.  *Covino*, 406 F. Supp. 3d at 152 (citing *Shankles v. Costa Armatori, S.P.A.*, 722 F.2d 861, 864 (1st Cir. 1983)).  And "[t]he reasonable communicativeness test is a two-pronged analysis that requires the Court to consider 1) the facial clarity of the contract and whether it 'make[s] the relevant provisions sufficiently obvious and understandable' and 2) whether the 'circumstances of the passenger's possession of and familiarity with the ticket,' indicate the passenger had the ability to become "meaningfully informed of the contractual terms at stake."  *Id.* (quoting *Lousararian v. Royal Caribbean Corp.*, 951 F.2d 7, 8-9 (1st Cir. 1991)).

With respect to the first prong, Southwest's COC makes clear in its introduction that passengers will be subject to additional terms and conditions, such as those found on a ticket and/or on Southwest's website.  *See* ECF No. 85-3 at 5 (providing, in the "Application of Conditions of Contract" Section of the "Introduction," "Transportation by Southwest Airlines Co. . . . is subject to the following terms and conditions, in addition to any terms and conditions printed on any Ticket, or specified on the Carrier's website.").  Then, throughout the purchasing process, Southwest provides a ticket purchase is subject to various terms and conditions, including its "fare rules, Terms & Conditions, Privacy Policy, and Contract of Carriage."  ECF 143-2 at 69.  The fare rules, Terms & Conditions, Privacy Policy, and Contract of Carriage are clearly shown to prospective purchasers in blue font, which indicates hyperlinks to pages containing the full terms found in each.  ECF No. 143-2, Hursh Dep. Tr., 79:3-15; 95:2-10.  Thus the COC itself and the information concerning additional terms and conditions found on Southwest's purchase pages are "sufficiently obvious and understandable" and clearly community that various terms govern passengers' ticket purchases.

With respect to the second prong, Southwest's desktop and mobile application booking pages explain in plain language that by purchasing Southwest's ticket, the passenger is agreeing to Southwest's Fare Rules, Terms & Conditions, Privacy Policy, and Contract of Carriage. ECF 143-2 at 69.  The positioning of the various terms are near the purchase button and within plain view.  *See id.*  Moreover, the blue color of the terms clearly communicates their hyperlink nature—through which passengers can click to view the complete text of the terms to which they are agreeing.  *See* ECF No.85-15 (providing the terms are presented in hyperlinks that link to webpages containing); *and see* ECF No. 85-16 (providing the T&Cs accessible through hyperlink on the desktop purchase page), ECF No. 85-17(providing the relevant T&Cs accessible through mobile application).

Southwest's presentation of clear hyperlinked terms on the same page as the "Purchase" button and requirement of assent before purchase is similar in substance to clickwrap agreements routinely enforced in the Eastern District of Pennsylvania, as well as federal courts in Texas.  *See e.g., Dobbs v. Health IQ Ins. Servs.*, No. 21-5276, 2022 U.S. Dist. LEXIS 133182 *10 (E.D. Pa. July 27, 2022) (finding, in part, the plaintiff assented to the Terms of Use through the clickwrap agreement, and there was sufficient constructive notice because the terms, "included a hyperlink, and the letters were purposely and conspicuously set off from the remaining text in a blue, underlined font"); *Putt v. Trip Advisors*, 2021 U.S. Dist. LEXIS 12997 at *15 (E.D. Pa. Jan. 25, 2021) (finding clickwrap agreements are "routinely enforced by the courts") (quoting *HealthPlanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 334) (citing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) ("Courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'"); *RealPage, Inc. v. EPS, Inc.*, 560 F. Supp. 2d 539, 545 (E.D. Tex. 2007) (Texas law

recognizes the validity of clickwrap agreements.")).

Moreover, Southwest provides evidence it unambiguously stated on its desktop and mobile application purchase pages that by purchasing a ticket, Bombin and Rood agreed to Southwest's COC and T&Cs, among other terms. *See e.g.*, Defs. Br. In Opp'n to Pls. Mot. to Strike, ECF No. 100-18 at 2 (providing information found on the purchase page of Southwest's iOS application); *id.* at 5 (providing displayed information found on the purchase page of the Southwest.com desktop); Defs. Notice Regarding Certification Opp'n., ECF 143-2 at 81 (displaying a purchase page found though Southwest's iOS application); *id.* at 69 (displaying a purchase page found through Southwest's southwest.com; ECF No. 143-2 at 26, Hursh Dep. Tr. 108:6-14 (providing consumers must click the purchase button to complete their transaction in order to create a ticket through Southwest's desktop webpage or mobile applications). And the full text of the COC and T&Cs were available to Bombin and Rood via hyperlink on the same purchase page. *See e.g.*, Behrens Decl., 85-15 at 2-3 (providing what information was accessible to customers, including Rood and Bombin, within Southwest's desktop and mobile application purchasing platforms during the proffered class period.

So, Southwest provided sufficient opportunity for Bombin and Rood "to become fully informed of the contractual provisions to which [they] . . . agree[d] [to] by booking . . . air travel with" Southwest. *Covino*, 406 F. Supp. 3d at 153. And, as the district court found in *Covino v. Spirit Airlines*, thus "[t]hat [the airline] failed to provide [plaintiffs] with a paper copy of its COC or a paper ticket which included the COC provisions is immaterial." *Id.* (citing Ticketless Traveler: Passenger Notices, 62 Fed. Reg. 19,473-477 (April 22, 1997) (recognizing the emergence of "ticketless travel" and rejecting the notion that airline companies are required to provide paper notices to ticketless passengers)).

Moreover, the district court's finding in *Covino* is instructive concerning the court's determination "Spirit . . . complied with the notice requirements of incorporated terms provided by DOT regulations." *Id.* (citing 14 C.F.R. § 253.4). As stated, "DOT requires that an airline make the full text of its COC available for public inspection at each of its airport and city ticket offices and provide a copy of the full text of the COC to passengers free of charge." *Id.* (citing 14 C.F.R. §§ 253.4(b), (c)). In *Covino*, the federal district court found "Spirit provided to Covino **even more substantial notice** of the terms incorporated in its COC than required by the regulations." *Id.* (emphasis added). The district court reasoned "[a]s opposed to simply providing Covino with information as to how she could obtain a copy of the COC at the airport, Spirit provided Covino with immediate and direct access to the full terms of the COC free of charge via hyperlink on the booking page." *Id.* The district courts reasoning in *Covino* is persuasive. In the present matter, Southwest provided Plaintiffs Bombin and Rood with direct and immediate access to the full terms they were agreeing to via hyperlink on Southwests' online booking page. *See* ECF No.85-15 (providing the terms are presented in hyperlinks that link to webpages containing); *and see* ECF No. 85-16 (providing the T&Cs accessible through hyperlink on the desktop purchase page), ECF No. 85-17(providing the relevant T&Cs accessible through mobile application). Southwest thus provided sufficient notice of governing terms and conditions to Plaintiffs Bombin and Rood through their purchase flows on desktop and mobile application. And Bombin and Rood assented to the governing terms by purchasing tickets through Southwest's platforms.

Therefore, in sum, Southwest has sufficiently demonstrated its online purchasing platforms reasonably provided Plaintiffs Bombin and Rood notice of their legal rights incorporated by reference in Southwest's contract of carriage, including the class action waiver in Southwest's T&Cs. Accordingly, because the class action waiver is enforceable, and named Plaintiffs received

sufficient notice of the T&Cs and assented to the terms' within, Plaintiff Bombin and Plaintiff Rood's class action claims are barred.  While Plaintiffs Bombin and Rood may assert individual claims, they agreed to terms preventing claims against Southwest in the form of a class action lawsuit.  *Korea Wk., Inc.*, 2016 WL 3049490, at *11 (Kearney, J.) ("Plaintiffs agreed to pursue claims on their own behalf and cannot now change their minds and transform into fiduciaries for others.").

Plaintiffs Bombin and Rood are inadequate class representatives under FRCP 23(a). Accordingly, Plaintiffs' Motion to Certify Class (ECF No. 71) is denied.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Exclude under Rule 702 Portions of the Expert Reports of Lee (ECF No. 146) is denied.  Furthermore, Plaintiffs' Motion to Certify Class (ECF No. 71) is denied.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

32